A97A0585, A97A0586. YETMAN et al. v. GREER, KLOSIK & DAUGHERTY et al.; and vice versa.

(483 SE2d 878)

ELDRIDGE, Judge.

On June 15, 1989, John A. Yetman died as the result of injuries received on May 20, 1989, from a collision caused by Gilbert Corporation of Delaware, Inc., H. B. Zachary Company, and the Georgia Department of Transportation ("DOT"). On June 21, 1989, the law firm of Greer, Klosik & Daugherty ("Greer, Klosik"), consisting of Richard G. Greer, Frank J. Klosik, Jr., and John F. Daugherty, were employed by Ione Edward Yetman and J. Anthony Yetman, appellants, to pursue a wrongful death action, as well as any claims of the Estate of John Alfred Yetman. The employment contract was a contingent fee contract for "a sum equivalent to 1/3 of any sum that may be recovered, either by suit or settlement, as attorney's fees, with said fees to be deducted by my attorneys from such recovery. . . . No settlement is to be made without the consent of the undersigned." On May 17, 1991, Greer, Klosik filed two suits in the State Court of Fulton County, which were consolidated for trial.

Trial of such suits began on January 10, 1994; the jury returned a verdict on January 21, 1994, in the amount of $2,406,255.03 for Yetman, which included prejudgment interest, and judgment was entered upon this verdict.

Daugherty tried the case for Greer, Klosik; however, on several occasions, Daugherty verbally abused J. Anthony Yetman, administrator of the Estate of John Alfred Yetman, with obscene epithets and vulgar language during trial. The defendants filed a motion for new trial. Prior to a hearing on such motions, DOT entered into settlement negotiations with the Yetmans, which resulted in a settlement of $820,000 in May 1994. From the settlement, Greer, Klosik received one-third, $273,000, as well as accrued expenses. Donald J. Sharp, other counsel employed by the Yetmans, received one-third of the Greer, Klosik fee under his agreement with them.

The trial court denied the motions for new trial of Gilbert of Delaware and H. B. Zachary Company in August 1994. Notice of appeal

was then filed on August 30, 1994.

All parties elected to engage in an appellate settlement conference, which was scheduled for October 1994. On the day prior to the conference, J. Anthony Yetman met with his lawyers Sharp and Daugherty to discuss strategy at the offices of Greer, Klosik. Yetman gave specific instructions and guidelines to Daugherty to follow in the settlement negotiation; at the settlement conference on October 11, 1994, Daugherty intentionally ignored and disregarded his client's instructions and became abusive to Yetman. On October 12, 1994, the Yetmans discharged Daugherty and Greer, Klosik and terminated the fee contract.

On October 14, 1994, Greer, Klosik filed an attorney's lien. The Yetmans denied that they owed anything in attorney fees other than what had already been paid.

On September 21, 1995, this Court affirmed the judgment of the trial court. On May 15, 1996, the Supreme Court of Georgia denied the petition for certiorari.

Represented by Sharp, the Yetmans engaged in settlement negotiations with the remaining defendants, which settlement was reached in November 1995, for $1,300,000.

In June 1996 an additional settlement for $1,600,000 was agreed to by the parties. Greer, Klosik claimed that no settlement could be made absent their consent because they claimed a one-third interest in the judgment and would take nothing less. As a result of Greer, Klosik's refusal to reduce their claim of one-third of the judgment, the Yetmans refused the settlement. After further settlement negotiations, a settlement of $1,800,000 was reached. However, Greer, Klosik continued to assert their position that they were entitled to one-third of the judgment. The defendants offered to pay $1,100,000 to the Yetmans and $700,000 jointly to Sharp and to Greer, Klosik to extinguish the attorney's lien.

On June 3, 1996, Greer, Klosik filed a motion to foreclose their attorney's lien based upon one-third of the outstanding judgment of approximately $2,100,000 including interest. On June 25, 1996, the trial court issued a rule nisi setting a hearing on the motion. Yetman's counsel made an appearance and demanded in writing a jury trial and later moved for a continuance of the hearing, which were both denied. After the hearing, the trial court ordered that the Yetmans receive $1,100,000 and that another $100,000 be paid to them prior to July 1, 1996; the trial court also found that the attorney's lien was valid, that the attorney fees were based upon the contingent fee contract with Greer, Klosik, and that Greer, Klosik was entitled to $600,000 in attorney fees, instead of the $700,000 that they claimed. The Yetmans filed their notice of appeal. Greer, Klosik filed their notice of cross-appeal.

## Case No. A97A0585

1. The Yetmans' first enumeration of error is that the trial court erred in determining that under the fee contract Greer, Klosik was entitled to a fee in excess of what they had received.

The contingent fee contract provided for two contingencies: recovery by suit or recovery by settlement of money. Greer, Klosik performed under the contingency contract by trying the tort case and by obtaining a verdict and judgment, which was the basis for calculating the contingency fee liability. However, the contingency in the contract was not obtaining a verdict or judgment, but was *recovery of money* either by settlement or suit; the termination of the employment of the firm prior to the recovery under the contract prevented the contract contingency from occurring, because the judgment had not become final and enforceable until the remittitur from the appellate courts had been filed with the trial court to allow recovery on the judgment. Had the contract been worded differently, the contingency might have been satisfied by either judgment or settlement, even after discharge. Thus, the contract was at an end, and the contingency of a recovery of money under the contract had not occurred prior to the termination of the attorneys' employment. *Strickland v. Williams*, 215 Ga. 175, 178 (2) (109 SE2d 761) (1959); *Sellers v. City of Summerville*, 208 Ga. 361, 366-367 (67 SE2d 137) (1951); *Bearden v. Lane*, 107 Ga. App. 424, 425 (1) (130 SE2d 619) (1963). "Where there is an agreement for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover for his services, and the precise event which was contemplated must happen." (Punctuation omitted.) *Strickland v. Williams*, supra at 178, quoting *Byrd v. Clark*, 170 Ga. 669 (2) (153 SE 737) (1930). Therefore, the amount of attorney fees cannot be calculated under the contract, which has been terminated.

"It has been pretty generally held in those States where a client is permitted to discharge his attorney with or without cause, even where the attorney has a contingent fee, that nevertheless, before this can be done, it must be not only by consent of the court on a proper proceeding for that purpose, but also with a proviso that the client either pays to the attorney, or secures to him the fees he has already earned and to which he is rightfully entitled." *White v. Aiken*, 197 Ga. 29, 35 (28 SE2d 263) (1943). The discharge of the attorney by the client does not defeat the attorney's right to be paid; the right to receive compensation comes, not under the contract of employment which is at an end, but under quantum meruit which is protected by the attorney's lien statute. OCGA § 15-19-14; *Morrow v. Stewart*, 197 Ga. App. 689, 690 (399 SE2d 280) (1990); *Burnette v. Bradley*, 190 Ga. App. 427, 428 (379 SE2d 225) (1989); *Myszka v. Henson & Hen-*

*son, P.C.*, 170 Ga. App. 878, 879 (1) (318 SE2d 672) (1984); *Dorsey v. Edge*, 75 Ga. App. 388, 392 (43 SE2d 425) (1947). If the services of the attorney have no value to the client under quantum meruit, then the client has no financial obligation to pay for services that did not achieve the contingency. See *May v. May*, 180 Ga. App. 581, 582 (349 SE2d 766) (1986); see also *Thomas v. Postell*, 77 Ga. App. 784, 786 (49 SE2d 835) (1948). However, in the case sub judice, the client received something of value: a judgment for $2,406,255.03 which was upheld on appeal and which led directly to favorable settlements.

"Where there is a contingent fee arrangement between a client and his attorney and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client. [Cits.]" *Bearden v. Lane*, supra at 425-426 (1).

The trial court did not err in finding that the Yetmans owed Greer, Klosik more than what they had already received for the valuable services that they rendered as lawyers to the Yetmans; the trial court did err in using the contingency fee contract percentage instead of quantum meruit to determine the amount of attorney fees owed by the Yetmans. Since the value of the services rendered under quantum meruit is determined based upon the value to the clients, then the amount of attorney fees due may be greater or less than the contingent fee would be, depending upon the facts and circumstances of the case.

2. The second enumeration of error is that the Yetmans were denied a trial by jury as to any and all issues raised by Greer, Klosik.

Where the services of the attorney, the reasonable dollar amount for attorney fees, and the value to the client are not in dispute of fact in quantum meruit, the trial court can decide the award of attorney fees as a matter of law without trial by jury, because there is no disputed issue of material fact for a jury to decide. See *Morrow v. Stewart*, supra at 690; *Burnette v. Bradley*, supra at 428; *May v. May*, supra at 581; *Rasmussen v. Nodvin*, 174 Ga. App. 203 (329 SE2d 541) (1985); *Hopkins v. Steele*, 164 Ga. App. 527, 528 (297 SE2d 528) (1982).

"There is nothing in [OCGA § 15-19-14], or in the section from which it is taken, or in the act itself, which treats of the right of a client to discharge an attorney, or a denial of any such right. Its subject-matter is that of lien, and in a specific instance the right and power of attorneys to control suits as well as judgments and decrees in order to enforce their liens as attorneys. A fair construction of the language would seem to be that all that was intended to be said was, that so long as the relationship existed the attorneys, for the purpose of enforcing their liens, not only had the same right and power over judgments and decrees as their clients, but control over the suits. It

meant nothing more. The act of 1873 which introduced into our law the provision that attorneys at law shall have a lien on suits, as well as on judgments or decrees, dealt, so far as attorneys at law were concerned, not with the right of clients to discharge them, or with the denial of such right. Such a subject was foreign to the act. It deals only with the liens of attorneys, presupposing that the relation of attorney and client exists. The act means to say that, so long as that relationship continues, not only the lien exists, but in order to enforce their claims for fees the attorneys shall have the same right and power over such suits as their clients had. This may have been surplusage, since under the already existing law the attorney by virtue of the relationship has certain rights and powers with respect to the conduct of the case. His voice is controlling as to many matters, such as whether the case be continued or not, what questions to ask witnesses, acknowledgment of service on pleadings, and numerous other questions. [Cits.] The language of [OCGA § 15-19-14], will not be held to mean to deny to the client the right to discharge his attorney. . . . [T]he trial court shall determine whether [the attorneys have] already received reasonable compensation for the services rendered to [their] client; and if so, that the judgment striking [their names] from the case as attorney[s] be affirmed. If it should be determined that the amount of fees already paid [them] is not sufficient in amount to be a reasonable compensation for the services rendered by [them] to the client at the time of [their] discharge, then the trial court will pass such order as will make [the attorneys] secure for such balance." *White v. Aiken,* supra at 33-34, 36. Thus, after discharge counsel loses rights and powers to control the suit, but the trial court has a duty to determine what would be reasonable compensation for the services rendered.

The trial court erred not in deciding legal issues, but in deciding by the wrong measure the value of such services of the attorneys, using a percentage of the recovery by settlement.

3. The third enumeration of error is that the trial court erred in deciding the motion less than 30 days after the motion was filed and in not giving sufficient notice of trial.

Since the case is being affirmed in part and reversed in part with a remand for determination of the amount of attorney fees in quantum meruit, such issues are moot. See Uniform Superior Court Rules 6.1, 6.3-6.7; 8.1, 8.2, 8.4-8.6; Uniform State Court Rules 6.2; 8.3.

4. Greer, Klosik's motion for damages for frivolous appeal filed under Case No. A97A0585 is denied.

## Case No. A97A0586

5. Greer, Klosik's first enumeration of error is that the trial court

erréd in finding that their attorney fees were only $600,000 represented by one-third of the settlement, as opposed to one-third of the judgment plus interest.

Such issue is controlled by Division 1 of this opinion, which found that one-third of the judgment is the wrong measure of damages for quantum meruit under OCGA § 15-19-14.

6. Greer, Klosik's motion for damages for frivolous appeal under Case No. A97A0586 is denied.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 19, 1997 —
RECONSIDERATION DENIED MARCH 12, 1997 — 

*Schrade & Richardson, Richard D. C. Schrade, Jr.*, for appellants.

*Greer, Klosik & Daugherty, Frank J. Klosik, Jr., John F. Daugherty*, pro se.