## A97A1943. SOSEBEE et al. v. McCRIMMON.
(492 SE2d 584)

BIRDSONG, Presiding Judge.

This appeal arises from a suit for damages for breach of contract for legal services or, alternatively, for the reasonable value of legal services under quantum meruit where the attorney withdrew from representation of the client before completion of the litigation for which he was retained. Suit was brought by appellee Edward W. McCrimmon, against appellant R. Shannon Sosebee, individually and as executrix of the estate of James B. Sosebee, seeking judgment against defendants jointly and severally for $53,097.50, past and future interest, attorney fees and costs.

The trial court granted appellee's summary judgment motion, denied appellant's motion for partial summary judgment, attempted to grant provisionally appellee's motion for sanctions and ordered that appellant's answer be stricken in the event its ruling on appellee's summary judgment motion should be overturned. *Held*:

1. Appellant contends the trial court erred in granting summary judgment to appellee for $53,097.50, plus $21,844.79 past interest, court costs, and future interest, and denying appellant's motion for partial summary judgment regarding the amount owed to plaintiff for legal representation in the Bobby Cobb litigation.

Appellant Sosebee retained appellee McCrimmon to represent her in two suits, brought against her individually and as executrix of her deceased husband's estate, by Chrysler First Business Credit Corporation. Appellee represented appellant in these suits on an hourly fee basis. Appellant also engaged appellee on a contingent fee arrangement to initiate related litigation, hereinafter referred to as the Bobby Cobb litigation. In the Bobby Cobb litigation, appellant alleged that her co-defendants in the Chrysler First cases and certain others had defrauded her and were liable to Chrysler First for any amounts for which she might be found liable in Chrysler First's cases.

The written contingent fee agreement (contract to employ attorney) in the Bobby Cobb litigation pertinently provided: "Attorney shall be entitled to his full fee, notwithstanding the client may discharge or obtain the substitution of attorneys before attorney has completed the services for which he is hereby employed. Client understands that he/she may dismiss Attorney at any time for any reason, upon written notice to him and payment of unpaid expenses and services rendered to the date of the receipt of such notice; payment to be based upon time devoted to Client's case at an hourly rate of **$200.00** per hour, or the applicable percentage of fee due him under the terms of this agreement of any offers which have been made by any adversary or collateral party, whichever is greater. . . .

This agreement and **no other** comprise the entire contract between attorney and client. . . ." (Boldface type denotes handwritten words and figures.)

This agreement is silent as to situations where the attorney withdraws from representing his client, either with or without client's consent, thereby compelling the client either to proceed without an attorney or to obtain other representation. This Court will not revise this agreement to fill a contractual void under the pretext of contract construction. "Courts are not at liberty to revise contracts while professing to construe them." *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (1) (231 SE2d 565).

The fee agreement also contained the following contingency as a condition to fee payment: 40 percent of the gross amount recovered from any party (45 percent in the event of an appeal by any party). Under the clear and unequivocal terms of the agreement, no fee payment was to become due and owing absent appellee's "recover[y]" of some gross amount "from any party," either by suit or settlement, except under certain circumstances not here applicable. It is uncontested that appellee filed notice of intent to withdraw from the Bobby Cobb litigation and obtained the trial court's authorization to withdraw prior to any such recovery. "[T]he termination of the employment of the [appellee] prior to the recovery under the contract prevented the contract contingency from occurring." *Yetman v. Greer, Klosik &c.*, 225 Ga. App. 397, 399 (1) (483 SE2d 878). "Thus, the contract was at an end, and the contingency of a recovery of money under the contract had not occurred prior to the termination of the attorney['s] employment." Id. " 'Where there is an agreement for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover for his services [under the terms of the contract], and the precise event which was contemplated must happen.' [Cit.] Therefore, the amount of attorney fees cannot be calculated under the contract, which has been terminated." Id.; compare *Overman v. All Cities Transfer Co.*, 176 Ga. App. 436 (336 SE2d 341); *Thomas v. Postell*, 77 Ga. App. 784 (49 SE2d 835). *Morrow v. Stewart*, 197 Ga. App. 689 (399 SE2d 280) is distinguishable, as the contingent fee contract there at issue contained an express agreement as to the compensation to be paid in the event of an attorney's dismissal or withdrawal.

The issue remains whether appellee could recover the reasonable value of his services under quantum meruit. Where the client discharges the attorney, with or without cause, the attorney retains the right of compensation, not under the contract of employment which is at an end, but under quantum meruit which is protected by the attorney's lien statute. *Yetman*, supra at 399. In the case at bar, however, the attorney withdrew of his own election claiming that the conduct

of the client compelled him to withdraw. " 'Where there is a contingent fee arrangement between a client and his attorney and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client.' " Id. at 400; *Burnette v. Bradley*, 190 Ga. App. 427, 428 (1) (379 SE2d 225); *Overman,* supra. This principle also applies when the client, by his or her conduct, gives the attorney reasonable cause to withdraw. In either event, however, "[i]f the services of the attorney have no value to the client under quantum meruit, then the client has no financial obligation to pay for services that did not achieve the contingency." *Yetman,* supra at 400.

Once it is determined that the services rendered were received by and benefited, that is, had value to the client, there remains the question as to the amount of attorney fees due and owing. See *Ford v. Smith,* 25 Ga. 675 (3). A quantum meruit claim requires proof as to the reasonable value of the attorney's services rendered in behalf of the client. *Overman,* supra at 438. It is error to rely blindly upon the contingency fee contract percentage in fixing this amount. *Yetman,* supra at 400 (1). "Since the value of the services rendered under quantum meruit is determined based upon the value to the clients, then the amount of attorney fees due may be greater or less than the contingent fee would be, depending upon the facts and circumstances of the case." Id. Generally, "[t]he question of reasonable value of services rendered is for the determination of the jury where there has been no admission or agreement by the opposite party that the amount sued for is reasonable." *Dorsey v. Edge,* 75 Ga. App. 388, 393 (2) (43 SE2d 425); accord *Pembroke Steel Co. v. Technical Sales Assoc.,* 138 Ga. App. 744, 745 (2), (3) (227 SE2d 491) (jury question remained whether owner, in fact, benefited from the work and, if so, to what extent). But, "[w]here the services of the attorney, the reasonable dollar amount for attorney fees, and the value to the client are not in dispute of fact in quantum meruit, the trial court can decide the award of attorney fees as a matter of law without trial by jury, because there is no disputed issue of material fact for a jury to decide." *Yetman,* supra at 400 (2).

By affidavit appellee asserts he was compelled to withdraw because appellant had commingled individual assets, assets of the deceased's corporation, and estate assets; loaned estate money without obtaining a security or promissory note; transferred estate assets without authority or accounting; changed her allegations of damages resulting from the partnership; refused, contrary to advice given, to establish an estate bank account; failed and refused to pay other attorneys who had represented the estate; refused to obtain experts necessary to pursue her claims; refused to assist in discovery; and refused to consider and accept proposals for resolution of the under-

lying cases. An attorney stated, by way of affidavit, that appellee had approached him about his firm taking over appellant's representation and the only reason appellee gave for withdrawing was that he would make a better witness (than counsel) at trial. He also stated that, after appellee withdrew, his firm commenced to represent appellant regarding the matters at issue and that appellant had paid his firm all but $5,000 of the amount which she owed for their representation. This testimony does not raise a genuine issue of material fact whether the *sole* reason for appellee's withdrawal was that he would make a better witness — it merely reflects that this was one of the reasons asserted by him.

By way of affidavit, appellant asserted she "concluded" from conversations with appellee that he wanted to withdraw because of the time-consuming nature of his representation and his conclusion there was no reasonable prospect for a recovery from which he could recover his fees. She informed appellee that she did not consent to his withdrawal but he proceeded to withdraw despite her objections. Yet, in her deposition, appellant testified that she believed appellee withdrew because he was scared. She further testified that appellee told her he withdrew because he felt he could be a witness in the case and "a bunch of other information that made no sense [to her] and still doesn't." She also testifies that she did not "know why [appellee] withdrew" and does not "know why the judge allowed [appellee] to withdraw." Appellant provided no reasonable explanation for the inconsistencies between her affidavit and deposition regarding the reason appellee gave for his withdrawal. Accordingly, the rule of inconsistent testimony discussed in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) and *Gentile v. Miller, Stevenson &c.*, 257 Ga. 583 (361 SE2d 383), applies. Compare *Sandifer v. Long Investors*, 211 Ga. App. 757 (1) (440 SE2d 479). After this rule is applied, appellant at most has established that she does not know why appellee withdrew or why the trial judge allowed it. The record viewed in this posture creates no genuine issue as to the reason for appellee's withdrawal; appellee's sworn statement that he was required to withdraw due to appellant's conduct remains uncontroverted in material part. Thus, the trial court did not err in concluding as a matter of law that appellee was entitled to recover the reasonable value of his services under quantum meruit.

"The burden on summary judgment is on the movant to show that there is no genuine issue of material fact and that [he] is entitled to judgment as a matter of law." *Riley v. H & H Operations*, 263 Ga. 652, 655 (3) (436 SE2d 659). Generally, issues of benefit and value of services rendered in a quantum meruit suit are exclusively for jury determination (see generally Wilburn, Ga. Law of Damages (4th ed.), § 17-2), but where the facts conclusively show by plain, pal-

pable and undisputed evidence the value and benefit to the recipient of services rendered, such case properly may be resolved by summary judgment. Compare *Soto v. Roswell Townhomes*, 183 Ga. App. 286, 288 (358 SE2d 670); cf. *Yetman*, supra at 400 (2). "Ordinarily, when one renders service or transfers property which is valuable to another, *which the latter accepts*, a promise is implied to pay the reasonable value thereof." (Emphasis supplied.) OCGA § 9-2-7; compare *Hudson v. Hudson*, 90 Ga. 581 (1) (16 SE 349). "The presumptions under this statute arise by operation of law . . . and are rebuttable [cit.]. [But a] contract to pay will not be implied from the mere performance of services. [Cit.]" *Smith Dev. v. Flood*, 198 Ga. App. 817, 819 (3) (b) (403 SE2d 249). Moreover, appellant "could not accept any services from [appellee] of which she was totally unaware." Id.; *Gosule v. Bestco, Inc.*, 227 Ga. App. 867 (490 SE2d 536). It would appear, however, that the required general awareness of the services being accepted could be either actual or constructive. In this case, appellee presented uncontradicted testimony as to the nature of and value of his hourly legal services and introduced evidence establishing the time spent on various legal tasks on behalf of appellant. Appellant countered that she believed appellee had been adequately paid for his services, she did not receive the benefit or result expected for the fee paid, and that she believes legal fees were incurred on needless legal action. She further admitted that she did not dispute that certain services were performed on her behalf in the Cobb case and that she had participated in a lot of hearings, depositions, and document review. Appellee proved the general value of the legal services which he established he had performed; he also proved appellant's awareness of and implied acceptance of certain of these services. However, appellee failed to establish that appellant accepted all of these services, or that she was aware of all of these services and remained silent or otherwise acquiesced in the performance thereof in her behalf. Thus, appellee failed to show by plain and palpable evidence that all of the services for which he sought and received judgment were of benefit to appellant. (Benefit should be proven either by showing appellant obtained an actual benefit therefrom or that she had accepted such services actually or constructively, so that the statutory presumption of OCGA § 9-2-7 would apply.)

Further, there can arise an occasion when the value of the benefit received by a party must be reduced for reasons of equity or justice. See *Hudson*, supra at 582 (2). In the case at bar, appellee withdrew from representation without the consent of the appellant. Thereafter, appellant was required to obtain another counsel and paid a substantial amount of legal fees to such counsel to pursue the litigation from which appellee had withdrawn. If some of the legal fees appellant had to pay her new attorney were for services, which

although originally performed by appellant, had to be re-performed in order to effectively represent appellant, e.g., reading files, personally examining disclosed precedent, case familiarization, etc., a jury could conceivably find that to the extent such duplication was required, appellant received no actual benefit or value from those same services initially performed by appellee.

The issue of value and benefit to appellant thus remained within the jury's exclusive province, and summary judgment should not have been granted as to a specific amount for the reasonable value of services rendered. Accordingly, we find the trial court did not err in denying appellant's motion for partial summary judgment; however, it did err in granting appellee summary judgment as to a sum certain, because genuine issues of material fact remain as to whether all the services at issue were of benefit and value to appellant. Further, prejudgment interest cannot be awarded in a suit based upon quantum meruit. *Howell v. Styles*, 221 Ga. App. 781, 785 (5) (472 SE2d 548), citing *Ga. Hospitality &c. v. Harrison Advertising*, 181 Ga. App. 163 (351 SE2d 489). The trial court erred in granting summary judgment in the amount of $21,844.79 for past due interest.

2. Regarding appellant's third enumeration of error, the judgment is ambiguous whether the trial court, in fact, adjudicated the material issues raised by appellee's motion for imposition of sanctions merely by issuing a provisional ruling in the alternative, or whether the paramount holding of the trial court was that the grant of summary judgment rendered the sanctions issue moot. " '[W]here a judgment is susceptible [to] two interpretations, that one will be adopted which renders it the more reasonable, effective, and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered.' " *Alexander v. Steining*, 197 Ga. App. 328, 329 (1) (398 SE2d 390). We find that the judgment did not effectively adjudicate appellee's motion for sanctions as the trial court's paramount holding was that summary judgment rendered the sanctions motion moot. Thus, there exists no reviewable ruling on the motion for sanctions, and we will not render an advisory opinion thereon. See *Bd. of Trustees &c. of Ga. v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720).

*Judgment reversed and remanded with direction. Ruffin and Eldridge, JJ., concur.*

DECIDED OCTOBER 2, 1997.

*Lamberth, Bonapfel, Cifelli, Willson & Stokes, Stuart F. Clayton,*

*Jr., Gary D. Stokes*, for appellants.
*Edward W. McCrimmon*, pro se.