A06A0341. COX et al. v. ATHENS REGIONAL MEDICAL
CENTER, INC.
(631 SE2d 792)

BLACKBURN, Presiding Judge.

Following the dismissal of their suit against Athens Regional Medical Center, Inc. ("ARMC"), Mercer L. Cox, John Wilson, Kimberly Hogland, Keith Hambrick, and Mary Sue Cox appeal contending that the trial court erred in dismissing their claims for (1) breach of contract, (2) violation of the Georgia Uniform Deceptive Trade Practices Act, (3) unjust enrichment, (4) breach of fiduciary duty, and (5) declaratory and injunctive relief.[1] Appellants' claims stem from their allegation that ARMC, which operates a nonprofit hospital,

---

[1] Appellants brought other claims that were also dismissed by the trial court: implied right of action, fraud/constructive fraud, negligent misrepresentation, negligence, and negligence per se. The dismissal of those claims was not appealed.

charges uninsured patients more than it charges patients covered by insurance or Medicare or Medicaid. For the reasons that follow, we affirm.

In response to Cox's complaint, ARMC filed a motion to dismiss. Because the trial court, without objection, considered a contract between the parties and both parties relied heavily on the contract language before the trial court, ARMC's motion to dismiss was converted to a motion for summary judgment. See OCGA § 9-11-12 (b) ("[i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[2]

So viewed, the record shows that appellants were uninsured patients who received medical treatment from ARMC. Mercer L. Cox was treated for a burn on his hand and charged $941.60; Kimberly Hogland was briefly hospitalized and charged $3,421; Keith Hambrick was treated as an outpatient one afternoon and charged approximately $8,500; Mary Sue Cox was treated briefly in the emergency room and charged approximately $2,386; and John Wilson was charged $10,650.26 for a one-day cardiac catheterization procedure. Appellants allege that these amounts are unduly inflated when compared to the amounts charged to insured patients, who enjoy the benefit of reduced rates negotiated in bulk by insurance companies and government third-party payors on behalf of their covered patients.

As a part of the registration process, appellants each signed an admission form routinely provided by ARMC to nonemergency patients. The admission form states: "In consideration of hospital services rendered to the patient, I jointly or severally, do hereby agree to pay Athens Regional Medical Center any and every account presented to me, or us jointly or severally, for said service or services

---

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

in accordance with the rates and terms of the hospital." The form itself does not provide specific prices charged by the hospital for services or supplies.

ARMC sets rates for hospital services under authority delegated to it by the Hospital Authority of Clarke County under a lease agreement governing ARMC's lease and operation of the hospital facility. The lease agreement allows ARMC to set hospital rates and enter into agreements with third-party insurers and join hospital and provider networks if ARMC deems it appropriate. ARMC provides emergency services to residents of Clarke County regardless of their ability to pay, and provides care to indigent, charity, and other patients who cannot afford to pay for all or a portion of the cost of their health care, based on eligibility standards ARMC adopts. The overall extent of this care is dependent in part on ARMC's ability "to provide such without jeopardizing its ability to serve as the principal hospital provider for the general public of Clarke County." Appellants specifically allege they do not seek free hospital care.

1. Appellants contend that ARMC breached its contract with them by not charging them what they deem a "reasonable" rate, because ARMC's admission form does not set a particular dollar amount for the services rendered. We disagree.

(a) *Georgia's Statutory Context for Hospital Rates*

At the outset, it is important to recognize statutory context relevant to the rates hospitals charge their patients in Georgia. Under OCGA § 31-7-11 (a), hospitals must make available to the public, upon request, certain pricing information, such as the charge for patient care or admission kits, emergency room charges, charges for specific routine and special tests such as chest x-rays and head CAT scans, the average total charges per patient day, the daily room rate of a hospital room, and operating and recovery room charges. The pricing information "shall be composed in a simple clear fashion so as to enable consumers to compare hospital charges and make cost-effective decisions in the purchase of hospital services." Id. Appellants do not allege that this information was unavailable here.

The Georgia Code also authorizes health care insurers to enter into agreements with health care providers such as hospitals, whereby the amount of payment is negotiated on behalf of patients participating in the insurance policy. OCGA § 33-30-23. In providing for this scheme, the General Assembly intended "to encourage health care cost containment while preserving quality of care," presumably by allowing insured patients to benefit from an economy of scale arising from the insurance company's negotiated group rates for hospital services. OCGA § 33-30-21.

At the heart of this case is the notion that those who do not participate in an insurance policy do not benefit from the lower rates

hospitals charge insured patients. Appellants do not allege that ARMC has violated any of the statutory schemes noted here; they simply challenge the fairness of charging uninsured patients more than insured patients. In doing so, they ultimately seek judicial intervention in a commercial transaction (for which the legislature has already established a policy favoring price comparison by the patient), whereby judges and juries would be called on to set appropriate prices for hospitals to charge their patients. We do not answer this call, and instead address the legal arguments properly presented before us.

(b) *Breach of Contract Claim*

"The construction of a contract is a question of law for the court." OCGA § 13-2-1. "Courts are not at liberty to revise contracts while professing to construe them." (Punctuation omitted.) *Sosebee v. Mc-Crimmon.*[3] "[N]o construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." (Punctuation omitted.) *Nguyen v. Lumbermens Mut. Cas. Co.*[4]

Here, the contract unambiguously creates an obligation for appellants to pay ARMC for hospital services "in accordance with the rates and terms of the hospital." Appellants argue that because the contract is so worded, the contract creates an open price term for which a "reasonable" price must be substituted by the court. A contract for hospital services does not fall within the scope of Georgia's Commercial Code, and appellants cite to no Georgia authority creating a condition of reasonableness under the facts in this case. Instead, appellants erroneously rely on *Reddix v. Chatham County Hosp. Auth.*,[5] and cases similar to it, which focus primarily on evidentiary issues in a collection action brought by a hospital to recover payment for charges on a patient's account. In *Reddix*, the Court held that where a hospital brought a collection action against a patient, and there was no agreement or proof as to the amount on the patient's account statement, the hospital was required to prove the reasonable amount of the charges for which it seeks reimbursement. Id. at 862-863 (4). Here, the amount patients were charged is not in dispute, and the ARMC is a defendant, not a plaintiff, with no burden to prove its damages. Therefore, *Reddix* does not apply to the case at bar.

---

[3] *Sosebee v. McCrimmon*, 228 Ga. App. 705, 706 (1) (492 SE2d 584) (1997).

[4] *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555 (1) (583 SE2d 220) (2003).

[5] *Reddix v. Chatham County Hosp. Auth.*, 134 Ga. App. 860 (216 SE2d 680) (1975).

This case is also distinct from *Med. Assn. of Ga. v. Blue Cross &c. of Ga.*[6] That case involved a contract between doctors and Blue Cross under which doctors would be reimbursed for performing procedures according to the "usual, customary and reasonable" fee program, which was set by Blue Cross. After Blue Cross changed its fee program, the court ruled that because the doctors were not allowed access to the method by which Blue Cross set the "usual, customary and reasonable" fees, they were wrongfully prevented from enforcing the contract terms and ensuring that Blue Cross paid them the proper amount under the new fee program. Therefore the court held that Blue Cross must make its fee methodology available to the doctors to allow them to determine whether they had been fully compensated for their services.

Here, however, the contract does not specify that the hospital will charge "usual, customary and reasonable" fees; it simply provides that the patients will pay "in accordance with the rates and terms of the hospital." There is no "usual, customary and reasonable" term in the contract, and plaintiffs do not allege that they are being charged anything other than what the hospital normally charges uninsured patients, which is what the contract authorizes the hospital to do. Unlike this case, the dispute in *Medical Association* was over whether the new rates imposed on the doctors were in fact the "usual, customary and reasonable" fees they were due under the contract. By contrast, in this case, there is no allegation that ARMC did not charge appellants the same rates charged to all uninsured patients, i.e., rates that were "in accordance with the rates and terms of the hospital," as provided by the admission form signed by appellants. Therefore, *Medical Association* does not apply to the facts of this case, and the method by which ARMC arrives at its fees is not an issue under the contract.

Appellants also argue that ARMC breached an implied duty of good faith in setting rates under the contract. We note that "[w]here an agreement gives a party discretionary decision-making power, and such power is not left to the absolute or uncontrolled discretion of the party, the discretion is subject to an implied obligation that it be exercised in good faith." *Time Warner Entertainment Co. v. Six Flags Over Ga.*[7] However, here, as held by the trial court, the plain language of the contract leaves the discretion to set the rates solely with ARMC. This reflects the practical reality that, in a hospital

---

[6] *Med. Assn. of Ga. v. Blue Cross &c. of Ga.*, 244 Ga. App. 801 (536 SE2d 184) (2000).

[7] *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 345 (1) (c) (537 SE2d 397) (2000), vacated and remanded by 534 U. S. 801 (122 SC 24, 151 LE2d 1) (2001), reinstated by 254 Ga. App. 598 (563 SE2d 178) (2002).

setting, it is not possible to know at the outset what the cost of the treatment will be, because it is not known what treatment will be medically necessary.[8] Therefore, for all nonindigent patients, hospitals must ensure that payment is made in exchange for whatever services it provides. "There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. v. Anderson*.[9] Appellants do not allege that ARMC charged them rates different from what it would normally charge other uninsured patients. Accordingly, under the contract, ARMC was expressly permitted to enforce the charges made under the rates applicable to appellants.[10]

In so ruling, we emphasize that "[l]aws in existence at the time a contract is executed are part of that contract." *Time Warner*, supra, 245 Ga. App. at 346 (1) (c). Here, we have noted that the Georgia General Assembly had established the scheme at OCGA § 31-7-11 (a), which provides that "[a]ny hospital shall, upon request, provide a written summary of certain hospital and related services charges. . . . Such written summary of charges shall be composed in a simple clear fashion so as to enable consumers to compare hospital charges and make cost-effective decisions in the purchase of hospital services." Therefore, the public policy of Georgia, as established by the General Assembly, is that purchasers of hospital services use this pricing information to compare hospital charges and make cost-effective decisions.[11] This represents the Georgia General Assembly's decision to let market forces control health care costs in Georgia. It is outside of the role of this Court to question the merits of this policy, and appellants' remedy for any perceived failures in this scheme is with the legislature not the courts. Moreover, appellants do not allege that they requested pricing information and ARMC failed to comply with this scheme, or that the required written summary of charges would not have been available to them upon request. Indeed, the language

---

[8] Appellants do not allege they did not need the treatment rendered to them.

[9] *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979).

[10] The fact that ARMC's standard rates for uninsured patients are higher than those for insured patients is consistent with the General Assembly's expressed intent "to encourage health care cost containment . . . by allowing health care insurers to enter into preferred provider arrangements," with health care providers that "[e]stablish the amount" of payment. OCGA §§ 33-30-21; 33-30-23 (a) (1).

[11] That the specific fees ultimately charged to the appellants were not listed as a part of the agreement reflects the practical limitations of the hospital setting, where it is often not known what specific procedures are medically appropriate at the outset. The pricing information available under OCGA § 31-7-11 (a) nevertheless does provide patients with the general scale of the fees charged by a particular hospital.

in ARMC's admission form readily dovetails with the General Assembly's price-comparison scheme at OCGA § 31-7-11 (a) (which puts the burden on patients to request the pricing information), because it puts patients on notice that they will be charged rates established by ARMC. While appellants may deem it desirable for ARMC to make reference to available pricing information in its admission form, this is by no means required by OCGA § 31-7-11 (a); therefore, its absence from the admission form is not grounds for reversal.

2. Appellants contend that ARMC's pricing scheme violates Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"). We disagree.

Appellants assert that ARMC violated OCGA § 10-1-372 (a) (11) and (12), which provide as follows:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . .
> (11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or
> (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

To state a claim under OCGA § 10-1-372 (a) (11), appellants must allege that ARMC made false or misleading statements with respect to price reductions. Appellants have not. They allege only that ARMC's disparate pricing practice is confusing and likely to create a misunderstanding. However, as "[a]ll persons are charged with knowledge of the law," *Nix v. Long Mountain Resources*,[12] appellants could have requested information about the hospital's rates referred to in the admission form, as provided by OCGA § 31-7-11 (a).

With respect to OCGA § 10-1-372 (a) (12), we note that ARMC's separate pricing scheme for uninsured patients is a result of agreements with insurers who are specifically encouraged and authorized by OCGA §§ 33-30-21 and 33-30-23 (a) (1) to enter into such pricing agreements. ARMC's conduct in entering into such agreements does not, in and of itself, violate OCGA § 10-1-372 (a) (12). Under these circumstances, and in the absence of allegations that ARMC presented appellants any price inducements to choose ARMC for medical care or sign its admission form, we discern no error in the trial court's dismissal of appellants' UDTPA claims.

3. Appellants next contend that the trial court erred by dismissing their claim of unjust enrichment. We disagree.

---

[12] *Nix v. Long Mountain Resources*, 262 Ga. 506, 509 (3) (422 SE2d 195) (1992).

"An unjust enrichment theory does not lie where there is an express contract." *Pryor v. CCEC, Inc.*[13] Here, appellants concede that the signed admission form constitutes a valid contract, as is demonstrated by the facts pled in support of their unjust enrichment claim. Accordingly, the trial court did not err in dismissing their claim for unjust enrichment.

4. Appellants contend that the trial court erred by dismissing their claim that ARMC breached a fiduciary duty owed to appellants in setting its prices. We disagree.

Appellants argue that OCGA § 23-2-58 creates a fiduciary relationship with ARMC. OCGA § 23-2-58 provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

However, appellants cite no Georgia cases, citing this provision or otherwise, that recognize a fiduciary relationship between a hospital and a patient with respect to pricing.[14] Nor do we read this provision to create a fiduciary relationship in this case, because there is no allegation that ARMC, in setting its rates, exercised controlling influence over the will, conduct, or interest of appellants, or held a relationship of mutual confidence. To the contrary, as provided by our General Assembly in OCGA § 31-7-11 (a), appellants were free to "make cost-effective decisions in the purchase of hospital services" and choose to seek health care elsewhere.

Appellants also rely on a New Jersey case, *Zoneraich v. Overlook Hosp.*,[15] which stated in dicta that nonprofit hospitals operate under "quasi-public trusts and have a fiduciary relationship with the public" in addressing the issue of whether a doctor on staff was properly denied staff privileges. The *Zoneraich* court relied on *Doe v. Bridgeton Hosp. Assn.*,[16] also cited by appellants, which addressed the issue of whether a hospital could refuse to provide elective abortions. We are not bound by these cases and find neither opinion persuasive as to the

---

[13] *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 452 (4) (571 SE2d 454) (2002).

[14] We note that, ordinarily, physicians owe a fiduciary duty to their patients with respect to the care given. See *Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003). The standard of care is not an issue in this case.

[15] *Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83 (514 A2d 53) (1986).

[16] *Doe v. Bridgeton Hosp. Assn.*, 71 N.J. 478 (366 A2d 641) (1976).

question of whether Georgia courts should recognize a fiduciary relationship between nonprofit hospitals and uninsured patients with respect to pricing. Appellants do not challenge the nonprofit status of ARMC, nor do they allege that ARMC fails to provide charity and indigent care. Accordingly, in the absence of Georgia precedent recognizing a fiduciary relationship between nonprofit hospitals and patients with respect to pricing, we discern no error in the trial court's dismissal of this claim. Matters of this nature are for the legislature to address, and the Georgia legislature has established the policy of this state as outlined above. It is not within the role of this Court to usurp the legislature's authority here.

5. Finally, appellants contend that the trial court erred in dismissing their claims for injunctive relief and declaratory relief. We disagree.

In their complaint, appellants enumerate a separate claim seeking injunctive and declaratory relief. In light of our holdings in the other enumerations, appellants' other claims were properly dismissed, and appellants are not entitled to the remedy of an injunction for those failed claims. See OCGA § 9-2-3.

With respect to declaratory judgment,

> OCGA § 9-4-2 (c) provides that relief by declaratory judgment shall be available, notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies. However, a declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated. As many times pointed out by this court, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light *before* he steps rather than after he has stepped in a hole.

(Punctuation omitted; emphases in original.) *Watts v. Promina Gwinnett Health System.*[17] With respect to the remedy appellants seek in their claim for declaratory judgment,

> it is clear that [upon proper dismissal of appellants' claims] all possible rights between the parties have accrued and all

---

[17] *Watts v. Promina Gwinnett Health System*, 242 Ga. App. 377, 382 (5) (530 SE2d 14) (2000).

possible obligations have attached. Thus, [appellants require] no direction from the trial court concerning [their] future conduct which might increase [their] liability or otherwise affect [their] interests with respect to [ARMC].

Id. Accordingly, the trial court did not err in dismissing this claim. *Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MAY 26, 2006 — 

*Cathey & Strain, Dennis T. Cathey, Edward E. Strain III, David A. Sleppy, Vroon & Crongeyer, Bryan A. Vroon, John W. Crongeyer,* for appellants.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael B. Terry, Fortson, Bentley & Griffin, J. Edward Allen, Jr.,* for appellee.