**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 22, 2025**

# In the Court of Appeals of Georgia

A25A0404. SUTHERLAND v. HAMMERS et al.

DOYLE, Presiding Judge.

Max Sutherland appeals from an order enforcing a lien for attorney fees in favor of his former attorneys, Robert Hammers, Jr., and John Mays, Jr. (collectively "Former Counsel"). Sutherland contends that the trial court erred by (1) finding that they had "reasonable cause" to withdraw, (2) failing to consider an alleged breach of fiduciary duties by Former Counsel, and (3) admitting a reconstruction of billing records over his hearsay objection. Based on the record before us, we affirm.

The validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide. Where the trial court is the factfinder, we construe the evidence in the light most favorable to support the court's judgment and will uphold the court's factual findings on appeal if there

is any evidence to support them. However, the plain legal error standard of review applies where the appellate court determines [issues] of law, not fact.[1]

So viewed, the record shows that in 2018, Sutherland allegedly became injured when he slipped and fell on a foreign substance while shopping in a Whole Foods grocery store. In 2019, he filed a personal injury action against Whole Foods while represented by his initial attorney, who is not a party to this case.[2] In 2020, Sutherland hired Mays as substitute counsel in the action. Sutherland executed a contingency fee agreement[3] providing, in relevant part:

> As compensation for legal services, client agrees to pay and hereby assigns unto attorney . . . forty (40%) percent of any recovery if a lawsuit is filed, even if settled before trial . . . ; "recovery" to include all monies . . . recovered in said claim by compromise, settlement or lawsuit. **It is understood that if no recovery of monies is made on this case, then**

---

[1] (Citations and punctuation omitted.) *Tolson v. Sistrunk*, 332 Ga. App. 324, 325 (772 SE2d 416) (2015).

[2] The initial firm conducted some preliminary discovery.

[3] They executed two subsequent fee agreements that, for the purposes of this appeal, do not vary materially from the original.

**no attorney fees or costs are due to attorney since this is a contingent fee contract.**[4] . . .

It is understood that the attorney has the discretion to make an offer of settlement for a value that he believes is reasonable in relation to the case [with the consent of the client].[5] It is understood and agreed that the client shall not settle any claim or claims arising out of the above matter without first having obtained the consent of the attorney, and that if client terminates attorney's services at any time, attorney shall have a lien on the case in the amount of his case expenses plus his hourly rate of $250/hr for work completed on the case.

The contract is silent as to the fee due if the attorney voluntarily withdraws. Soon thereafter, attorney Hammers joined Mays in the representation under the same fee agreement at no additional cost to Sutherland.

Throughout their representation over approximately the next three years, Former Counsel conducted discovery and motions practice, obtained a spoliation order against Whole Foods, retained experts, participated in settlement negotiations, and conducted focus groups to assess the strength of Sutherland's claims.

---

[4] (Emphasis in original.)

[5] This bracketed phrase was added by Sutherland with Mays's agreement.

In June 2022, Whole Foods made a $1 million settlement offer, which Hammers strongly urged Sutherland to take. Sutherland did not want to accept the offer, instead wanting to demand $15 million. After further discussion with Former Counsel, in September 2022, Sutherland had Former Counsel send Whole Foods a settlement demand for $10 million, which was not accepted.

In December 2022, the parties participated in court-ordered mediation prior to a January 2023 trial date. In the mediation, Whole Foods presented a potential defense, supported by video footage, that a baby in the store had dropped debris on the floor and another patron had slipped on the area shortly before Sutherland slipped on the same area. After the mediation, Whole Foods tendered a 30-day $2 million settlement offer under OCGA § 9-11-68.[6] Former Counsel were concerned about the potential defense, so they conducted both a mock cross-examination and a jury focus group. Polling of the focus group revealed that all 12 of its members would have returned a defense verdict based on the "baby defense." In light of this and their individual assessments, Former Counsel deemed the litigation risk too great to decline

_____

[6] That Code section provides, in part, that a plaintiff must pay certain defense attorney fees and expenses if the plaintiff rejects a qualifying settlement offer and later recovers an amount that is less than 75 percent of the offer. See OCGA § 9-11-68 (b).

the $2 million settlement offer. This was based in part on Sutherland's exposure to significant liability for Whole Foods's attorney fees under OCGA § 9-11-68 (b).

Around January 1, 2023, the pipes in the courthouse burst, so the parties received notice that any trial dates would be suspended "for quite some time." On January 6, 2023, before Whole Foods's settlement offer expired on January 23, 2023, Sutherland met with Mays to discuss his view of the case and how best to move forward; Sutherland did not want to involve Hammers due to a lack of trust. At that meeting, Sutherland was reluctant to discuss the focus group results and instead gave Mays a presentation demonstrating "his own angle on the case." He was adamant that he did not want to accept the $2 million settlement offer. Soon after that meeting, Sutherland emailed Former Counsel stating that he wished to make a $4.5 million counteroffer.

On January 19, 2023, Sutherland met with both Former Counsel "to discuss next steps." Former Counsel expressed their belief that Sutherland should settle the case and that Sutherland faced substantial financial risk by responding with his proposed $4.5 million counteroffer, which would amount to a rejection. They explained that shortly before that meeting, with the Whole Foods offer still pending

and the trial indefinitely delayed, Former Counsel had negotiated with Whole Foods to see "if there is anything more that you can do, and they said if you will give us what it's going to cost us to prep the trial . . . but you have to demand it, we'll settle the case for $2.2 million." Former Counsel asked Sutherland to allow them to make that demand, and Sutherland declined.

Based on their inability to impress upon Sutherland their perceived risk of trial and relative weakness of his case, Former Counsel told Sutherland that they would need to withdraw from the case. They explained Sutherland's rights and informed him that they would file an attorney fee lien on the case without specifying the amount. They further told him to "take the weekend [to think about the decision] because the [$2 million] offer of settlement was still open, and [they] could [still] make that [$2.2 million] demand and settle the case."

The following Monday, Sutherland informed Former Counsel that he had not changed his mind, so on January 30, 2023, Former Counsel filed a motion to withdraw as counsel supported by a notarized consent affidavit executed by Sutherland[7] stating that he consented to the withdrawal of Former Counsel. They also sent Sutherland a

---

[7] Sutherland signed the affidavit on January 27, 2023.

letter memorializing their withdrawal and stating that "[w]e will be filing a lien for the value of our fees and expenses in the event of a later favorable outcome." The trial court entered an order granting the motion to withdraw on February 1, 2023. The next day, Former Counsel filed a lien pursuant to OCGA § 15-19-14 (b) seeking $800,000 in attorney fees and $67,243.38 in costs.

Sutherland obtained new counsel within a month, and the case was placed on a February 2024 trial calendar. That month, after a final pre-trial mediation, Sutherland accepted a settlement offer for $250,000 more than the offer Former Counsel advised him to accept.[8]

Thereafter, Sutherland objected to Former Counsel's lien and requested a hearing to determine its validity. The trial court held an evidentiary hearing at which Sutherland, Hammers, and Mays testified, and affidavits documenting legal fees and expenses were admitted as exhibits. Following that hearing, the trial court entered an

---

[8] The record is unclear as to the specific dollar amount. The trial court found that the amount was less than ten percent of the amount negotiated by Former Counsel, and the transcript contains Sutherland's testimony of an unspecified amount $250,000 above the offer obtained by Former Counsel, which reflects an approximate 11 percent increase over the $2.2 million counteroffer proposed by Former Counsel.

order awarding Former Counsel a total of $497,518.38 in attorney fees and expenses based on a quantum meruit theory.[9] Sutherland now appeals.

1. Sutherland first contends that the trial court erred by awarding fees to Former Counsel because they voluntarily withdrew without reasonable cause. Based on the record before us, we discern no reversible error.

The general legal principle at issue is as follows:

> [A]n attorney is entitled to a fee that has been earned. OCGA § 15-19-14. When a fee contract exists and the matter is brought to a successful conclusion by the attorney, the contract will govern the attorney's fee. But when such a contract exists for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover for his services, and the precise event which was contemplated must happen [for the attorney to be compensated pursuant to the contract]. . . .
>
> *When a contingent fee arrangement exists between a client and an attorney and the client prevents the contingency from happening, the attorney*

---

[9] The court rejected the hourly rates sought by Former Counsel ($825 per hour and $450 per hour) and instead used an unspecified reduced rate deemed "reasonable and customary for this type of personal injury case. . . ." Based on the evidence of billable hours proffered by Former Counsel at the hearing, the award corresponds to a $350 hourly rate (despite the contract language specifying a $250 hourly rate in the event that Sutherland terminated the relationship). Sutherland does not specifically challenge this aspect of the trial court's order, so we do not address it.

*is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client.* Thus, although prevented from recovering under the contract, the attorney still has a remedy in quantum meruit.[10]

This prevents a client from benefitting from representation but avoiding payment by precluding the happening of the contingency through his conduct.

For example, in another more extreme case, *Sosebee v. McCrimmon*,[11] this Court stated that a quantum meruit recovery can be available to an attorney if "the client, by his or her conduct, gives the attorney reasonable cause to withdraw" from a contingency fee case.[12] In *Sosebee*, an attorney represented a plaintiff on a contingency basis in a fraud action against her co-defendants in a separate matter concerning her deceased husband's estate.[13] This Court recited the reasons for the attorney's withdrawal without his client's consent:

> [H]e was compelled to withdraw because appellant had commingled individual assets, assets of the deceased's corporation, and estate assets;

---

[10] (Citations and punctuation omitted; emphasis supplied.) *Ellerin & Assocs. v. Brawley*, 263 Ga. App. 860, 861-862 (1) (2) (589 SE2d 626) (2003).

[11] 228 Ga. App. 705 (492 SE2d 584) (1997).

[12] Id. at 707 (1).

[13] See id. at 705 (1).

loaned estate money without obtaining a security or promissory note; transferred estate assets without authority or accounting; changed her allegations of damages resulting from the partnership; refused, contrary to advice given, to establish an estate bank account; failed and refused to pay other attorneys who had represented the estate; refused to obtain experts necessary to pursue her claims; refused to assist in discovery; and refused to consider and accept proposals for resolution of the underlying cases.[14]

Here, although the discord between Sutherland and Former Counsel never rose to the level present in *Sosebee*,[15] the record supports the trial court's findings that Sutherland had lost faith in Former Counsel's assessment of his case and whether they could represent his best interest going forward. Sutherland did not wish to include Hammers in the January 6 meeting to discuss the focus group results, and there was testimony from Former Counsel, credited by the trial court, that the communication between Sutherland and Former Counsel had broken down — "it really . . . started setting in that he just simply doesn't want to listen to our counsel." This record supports the trial court's finding that the attorney-client relationship had

---

[14] Id. at 707-708 (1).

[15] Unlike in *Sosebee*, Sutherland signed an affidavit stating that he consented to the withdrawal.

deteriorated, and that the deterioration was not based on a lack of value brought by Former Counsel's representation or any conduct that had hampered Sutherland's case in any way to that point. Moreover, the ultimate result — Sutherland accepted a settlement for approximately ten percent greater than Former Counsel had negotiated — is consistent with a finding that Former Counsel were adequately considering Sutherland's interest by recommending the settlement and not merely attempting to force a fee recovery without the additional work of trying the case.[16]

Based on this record and in light of the trial court's findings, the court was authorized to conclude that Former Counsel's withdrawal from the case was reasonably warranted by the breakdown in the relationship with Sutherland and by Former Counsel's view that they could not represent him in a way that Sutherland would deem effective. We emphasize that this conclusion is based in part on the standard of review, which is deferential to the trial court's factual findings based on the testimony in the record. The trial court explicitly found Former Counsel's

---

[16] See generally *Overman v. All Cities Transfer Co.*, 176 Ga. App. 436, 438 (336 SE2d 341) (1985) ("Where there is a contingent fee arrangement between a client and his attorney *and the client prevents the contingency from happening*, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client.") (emphasis supplied).

testimony "credible . . . about the deterioration of the attorney-client relationship." The record documents a nearly three-year relationship of productive legal representation that culminated in a settlement with later-substituted counsel that was roughly in line with the offer on the table at the time Former Counsel withdrew. In a different case with different facts, an attorney's withdrawal could be deemed unwarranted because, for example, it left a client without adequate representation,[17] the advice given was out of line with the client's interests, or the attorney manufactured or exacerbated the conflict to justify a quantum meruit claim.[18] Therefore, this case does not stand for the proposition that counsel can always recover fees on a quantum meruit basis after withdrawing from a contingency fee case.[19] But we likewise decline to adopt a bright-line rule that attorneys who voluntarily withdraw

---

[17] By contrast, the trial calendar was indefinitely suspended at the time Former Counsel withdrew, and Sutherland was able to obtain new counsel within a month.

[18] Compare *Doman v. Stapleton*, 256 Ga. App. 383, 385 (568 SE2d 509) (2002) (describing a scenario warranting withdrawal because a client "fil[ed] for arbitration against his attorney, . . . stated [his] intent to reduce [the attorney's] fees, and in general, [displayed a] very antagonistic nature which infected the relationship virtually ab initio").

[19] Nor does this case require the trial court to believe every attorney's assertion about their client's conduct and reasonableness.

from contingency fee cases are never authorized to recover fees on a quantum meruit basis.

2. Sutherland next contends that the trial court erred by failing to consider whether Former Counsel forfeited their fees by breaching their fiduciary duties to him. We disagree.

Sutherland's trial-court pre-hearing brief argued as a general matter that Former Counsel attempted to "strong-arm" him into taking the settlement offer, and this amounted to a breach of their fiduciary duties to him that would prevent recovery of any fee.[20] Sutherland's appellate brief intimates that the trial court failed to make any findings or rulings as to an alleged breach of fiduciary duties, so he seeks either reversal or remand on appeal. But this overlooks the trial court's explicit finding that Former Counsel "had just cause to withdraw as [Sutherland's] counsel based on their credible testimony about the deterioration of the attorney-client relationship." This was based on extensive testimony by all of the parties describing their interactions, and the trial court had ample opportunity to conclude that Former Counsel's withdrawal

---

[20] As support for this proposition, Sutherland cites *Odom v. Hilton*, 105 Ga. App. 286, 292 (3) (a) (124 SE2d 415) (1962) ("An attorney may lose his right to fees for unprofessional conduct or abandonment of his client's cause."), citing *Hightower v. Detroit Edison Co.*, 262 Mich. 1 (247 NW 97) (1933).

13

was not warranted because their own conduct was unethical or unreasonable.[21] It did not.

Further, there was evidence credited by the trial court that Former Counsel informed Sutherland about his options and the consequences of his decision, Former Counsel were diligent in allowing Sutherland time to consider his options, they chose a time in the proceedings that would minimize any interruption in Sutherland's representation because there was no imminent trial deadline, and Sutherland himself signed an affidavit consenting to the withdrawal. Based on this record, Sutherland's argument premised on a breach of fiduciary duty presents no basis for reversal.

3. Finally, Sutherland contends that the trial court erred by relying on a reconstruction of attorney Hammers's hourly billing over his objection.[22] This argument is without merit.

"Under a quantum meruit claim, an attorney is entitled to have his fees valued both in light of the amount of work he has done, and also by the results accomplished.

---

[21] The trial court's order noted that Sutherland failed to "put forth . . . evidence that . . . [Former Counsel] failed to properly handle any portion of his case."

[22] Sutherland does not challenge the reconstruction submitted by attorney Mays, which was done essentially the same way.

Accordingly, the trial court must determine whether [the client] received any benefit from [the attorney's] services, and if so, the value of those services rendered and received."[23] "Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient."[24]

Here, to demonstrate the value of the legal services he rendered to Sutherland, Hammers proffered a reconstruction of his firm's time because he was working on a contingency basis and did not keep hourly records notated in the traditional way. The reconstruction included an affidavit explaining his fees and an accompanying spreadsheet reflecting the hours he worked and tasks he performed along with his associate and paralegal. He testified as to his experience and qualifications, and he explained that to arrive at the numbers, he consulted his firm's regular, contemporaneously made business records, including accounting and database software tracking client communication, file notes, and task flows. He further testified that he was personally involved in the representation as well as the work done by his

---

[23] (Citations and punctuation omitted.) *Lewis v. Smith*, 274 Ga. App. 528, 531-532 (2) (618 SE2d 32) (2005).

[24] *Ellerin & Assocs.*, 263 Ga. App. at 863 (2).

staff on behalf of Sutherland, holding regular weekly meetings and "reviewing everything they did before it went out."

"It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records [hearsay] exception to a particular document and whether the circumstances of the document's preparation indicate trustworthiness."[25] Georgia courts have recognized that evidence of attorney fees is not inadequate simply because it is a summary prepared in "hindsight."[26] The trial court was within its discretion to rely on Hammers's testimony, affidavit, and reconstructed timekeeping to proffer his value. Further, it is clear that the trial court did not do so blindly because it reduced his hourly rate to what it deemed reasonable

---

[25] *Clark v. Jefferson Capital Systems, LLC*, 374 Ga. App. 167, 172 (2) (911 SE2d 713) (2025).

[26] See *Taylor v. Devereux Foundation, Inc.*, 316 Ga. 44, 94 (VIII) (B) (885 SE2d 671) (2023).

in this case. Based on this record, we discern no reversible error in considering the reconstruction of time worked on the case provided by Hammers.[27]

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[27] See generally *Kennison v. Mayfield*, 359 Ga. App. 52, 69 (2) (c) (856 SE2d 738) (2021) ("[I]t is feasible without contemporaneous timekeeping [in contingency fee cases] to look at the preparation, discovery, motions practice, and hearings that occurred . . . and determine a reasonable value of the services rendered over the course of those events based on hourly rates generally accepted in comparable cases.") (physical precedent only).