**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 24, 2014**

# In the Court of Appeals of Georgia

A14A0266. THE MEDICAL CENTER, INC. v. BOWDEN.

MILLER, Judge.

The Medical Center, Inc. ("TMC") filed a hospital lien to recover the costs of providing emergency medical treatment to Danielle Bowden, an uninsured patient, for injuries she sustained in an automobile accident. When a dispute arose regarding satisfaction of the lien from insurance proceeds, the insurance company filed an interpleader action. Bowden counterclaimed against TMC, alleging that the hospital's charges were unreasonable because it overcharges uninsured patients. Bowden subsequently moved to compel TMC to produce its pricing agreements with health insurance companies and other information related to its charges of insured and uninsured patients. The trial court granted Bowden's motion to compel and issued a certificate of immediate review. We granted TMC's application for interlocutory

review, and on appeal TMC contends that the ordered discovery is not relevant nor reasonably calculated to lead to admissible evidence and encompasses confidential and proprietary information. This Court finds that the discovery Bowden seeks is not relevant to her claim that TMC's medical charges for her treatment were unreasonable and we reverse the trial court's order.

We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *Lovell v. Ga. Trust Bank*, 318 Ga. App. 860, 862 (1) (734 SE2d 847) (2012).

On July 1, 2011, Bowden was injured when a rental car in which she was a passenger was involved in an accident. Bowden was taken by ambulance to TMC in Columbus, where she received emergency medical treatment, including surgery, and was hospitalized for three days. The next day, Bowden's mother signed a consent for treatment and a payment policy acknowledgment.[1] Bowden, who had no health insurance at the time of the accident, was discharged on July 4, 2011. On July 13, Bowden returned to the hospital for physical therapy and signed an admission form obligating her to pay for the therapy. TMC billed Bowden approximately $21,500 for her treatment, which included emergency surgery, two CT scans, and physical therapy

---

[1] Bowden is not a minor.

2

over the three days that she was hospitalized. TMC filed a hospital lien (OGCA § 44-14-470 et seq.) to recover the costs of Bowden's care.

Enterprise Rentals owned the vehicle involved in the accident and insured it under a policy with a limit of $25,000. Negotiations ensued between Bowden, TMC, and Enterprise. The hospital offered to settle its $21,500 lien for $8,333, but Bowden refused and no settlement could be reached. Enterprise then filed an interpleader action and paid $25,000 into the registry of the court. Bowden cross-claimed against TMC, alleging that the hospital's charges were unreasonable and excessive because she was charged more than an insured patient, there was no valid contract between her and TMC, any contract was void due to unconscionability, TMC had engaged in deceptive trade practices, and TMC would be unjustly enriched if it collected the full amount.

To support her claim that TMC's charges are not reasonable, Bowden propounded discovery seeking TMC's pricing agreements with insurance companies and information about TMC's revenue and the number of uninsured patients it treats. TMC objected to Bowden's discovery requests on relevance and confidentiality grounds, and Bowden filed a motion to compel. Following a hearing, the trial court

3

granted Bowden's motion, ruling that TMC had to provide the information subject to a protective order.

TMC contends that the discovery Bowden seeks is not relevant to her claim nor reasonably calculated to lead to admissible evidence and therefore the trial court erred in granting Bowden's motion to compel. We agree.

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

OGCA § 9-11-26 (b) (1). "While the extent of discovery is generally within the discretion of the trial court judge, this discretion must be based on sound legal analysis with an eye to promoting the purpose of discovery and limiting its abuse." (Citation and footnote omitted.) *Intl. Harvester Co. v. Cunningham*, 245 Ga. App. 736, 739 (1) (538 SE2d 82) (2000).

With this principle in mind, we look to the purpose of the hospital lien statute, which provides that a hospital operating in this state "shall have a lien for the reasonable charges for hospital . . . care and treatment of an injured person[.]" OCGA

4

§ 44-14-470 (b). "The [hospital lien] statute enables hospitals to collect payment for unpaid reasonable charges for furnishing hospital care to an injured person by giving the hospital a lien against any cause of action that accrues to the injured person arising out of the injuries that necessitated the care." *MCG Health, Inc. v. Kight*, 325 Ga. App. 349, 351 (1) (750 SE2d 813) (2013). In short, the lien allows the hospital to step into the shoes of the injured person for purposes of receiving payment from the tortfeasor or the tortfeasor's insurance company for economic damages represented by the hospital bill. Id. Moreover, the hospital lien statute allows hospitals to collect the full amount of their bills, regardless of insurance "write-offs." Id.

In her discovery requests, Bowden sought (1) specific, itemized bills of what she would have been charged had she been covered by Medicaid, Medicare, Blue Cross/Blue Shield of Georgia, Tri-care, or TMC's indigent patient program; (2) total gross revenue received by TMC during the fiscal year prior to July 2011 where full rates were charged pursuant to OCGA § 31-7-11;[2] (3) total revenues received by

---

[2] Pursuant to OCGA § 31-7-11, hospitals must provide, upon request, a written summary of certain hospital and related services charges, including but not limited to:

(1) The average total charges per patient day for the facility's previous fiscal year;

5

TMC during the fiscal year prior to July 2011 where the rates charged were less than full rates set forth in OCGA § 31-7-11; (4) the percentage of patients in fiscal years 2010 and 2011 that paid the full rates; (5) the percentage of patients in fiscal years 2010 and 2011 that paid less than the full rates; (6) the number of uninsured patients treated in TMC's emergency room since July 1, 2011; (7) the number of uninsured patients seen in the emergency room since July 1, 2011 and billed for treatment; (8) rate-setting agreements from the years 2010, 2011, and 2012 between TMC and

---

(2) The daily rate for a room in said hospital, which rate shall include an explanation of the categories of services included in said charge;
(3) Anesthesia charges, with an explanation of the categories of services included in this charge;
(4) Operating room charges;
(5) Recovery room charges;
(6) Intravenous administration charges;
(7) Emergency room charges, with an explanation of the categories of services included in the charge;
(8) The charge for the patient care kit or admission kit or other such items furnished to the patient on admission;
(9) Charges for specific routine tests, including but not limited to a complete blood count, urinalysis, and chest X-ray; and
(10) Charges for specific special tests, including but not limited to electrocardiogram, electroencephalogram, CAT scan of the head, CAT scan of liver, CAT scan of lungs, CAT scan of skeletal system, spirometry, and complete pulmonary function.
Such written summary of charges shall be composed in a simple clear fashion so as to enable consumers to compare hospital charges and make cost-effective decisions in the purchase of hospital services.

6

Medicaid, Medicare, Blue Cross/Blue Shield of Georgia, Tri-care, and the indigent patient program; and (9) any admission form used during the previous six years, and the dates the form was used.

At issue in this case is whether TMC's charges to Bowden were reasonable. Pursuant to OCGA § 31-7-11, hospitals must provide information regarding their charges to consumers upon request, and during the course of litigation, Bowden requested and received this information from TMC.

The discovery that Bowden seeks regarding rate-setting agreements and what Bowden would have been billed under those agreements is not relevant to the issue of whether TMC's bills for her medical care are reasonable. Under Georgia law, hospitals are free to contract with insurance companies to set preferred rates. See OCGA §§ 33-30-21; 33-30-23. None of the rate-setting agreements that she requests apply to her because she was uninsured. More importantly, even if Bowden had participated in a health care plan, the hospital would be entitled to collect the full amount of its bill under the lien statute, not merely the lower reimbursement rate contracted between the insurance company and the hospital. See *Kight*, 325 Ga. App. at 353 (1).

Evidence regarding TMC's revenues and the number and type of patients it treats has no relevance on the issue of whether TMC's $21,500 charge to Bowden for three days of medical treatment is reasonable. Even in the unlikely scenario that a hospital's profits from treating uninsured patients may be germane in some instances, such evidence would not be relevant to the issue of whether the particular charges to a particular person are reasonable. Bowden is free to present evidence–whether through an expert, or from other medical providers or consumers–to rebut TMC's claim that its charge was reasonable given the market rate for medical services in Columbus.

Moreover, this Court has repeatedly rejected claims by uninsured persons that hospitals have committed breach of contract, or engaged in deceptive trade practices, or have been unjustly enriched because they charge a higher rate for uninsured persons than for insured patients. *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586 (631 SE2d 792) (2006); see also *Morell v. Wellstar Health System*, 280 Ga. App. 1 (633 SE2d 68) (2006); *Satterfield v. Southern Regional Health System*, 280 Ga. App. 584 (634 SE2d 584) (2006); *Pitts v. Phoebe Putney Mem. Hosp.*, 279 Ga. App.

8

637 (631 SE2d 830) (2006). *Cox* has foreclosed the argument that hospitals must charge insured and uninsured patients the same rates.[3] *Cox*, supra, 279 Ga. App. 586.

> At the heart of this case is the notion that those who do not participate in an insurance policy do not benefit from the lower rates hospitals charge insured patients. [Bowden] simply [challenges] the fairness of charging uninsured patients more than insured patients. In doing so, [she] ultimately [seeks] judicial intervention in a commercial transaction (for which the legislature has already established a policy favoring price comparison by the patient), whereby judges and juries would be called on to set appropriate prices for hospitals to charge their patients. We do not answer this call[.]

*Cox*, supra, 279 Ga. App. 588-589 (1) (a).

As to the admission forms she requests, Bowden has not shown that admission forms that may have been signed by other patients at other times have any relevancy to her claim regarding the hospital lien. The admission form that her mother signed on her behalf is already part of the record.

---

[3] Bowden tries to distinguish this case from *Cox* and its progeny on the ground that, in those cases, the patients signed a consent form for treatment, accepting responsibility for paying the hospital charges, whereas she did not personally sign a consent form prior to receiving emergency medical treatment. See, e.g., *Cox*, supra, 279 Ga. App. 589-592 (1) (b). However, Bowden's mother signed a consent form on Bowden's behalf (OCGA § 31-9-2 (a) (3)) and it is undisputed that Bowden received emergency medical treatment from TMC. Moreover, by law, consent is implied for emergency medical treatment. See OGCA § 31-9-3 (b).

Since the broad range of discovery Bowden requests is not relevant to her claim, the trial court abused its discretion in granting her motion to compel.[4]

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*

---

[4] In light of our holding, we need not address TMC's second contention that the ordered discovery would reveal confidential or proprietary information.