297 Ga. 285
FINAL COPY

S14G1632.  BOWDEN v. THE MEDICAL CENTER, INC.

NAHMIAS, Justice.

Georgia law gives a hospital a lien for the reasonable charges for its care and treatment of an injured person against all causes of action accruing to that person on account of her injuries, and establishes a process for the hospital to perfect its lien for the amount claimed to be due.  See OCGA §§ 44-14-470, 44-14-471.  The Medical Center, Inc. (TMC) provided hospital care to Danielle Bowden, who did not have health insurance, after she was injured in a car wreck, billed her $21,409.59 for her care, and filed a hospital lien for that amount.  In a subsequent lawsuit, Bowden sought to invalidate the lien on the ground that the billed charges were grossly excessive and did not reflect the reasonable value of the care she received, while TMC alleged that $21,409.59 was a reasonable amount for Bowden's care and sought a declaratory judgment establishing the validity of its lien.

During discovery, TMC objected to Bowden's requests for, among other things, information and documents regarding the amounts that the hospital charged insured patients for the same type of care.  Bowden filed a motion to

compel discovery, which the trial court granted subject to the entry of a protective order to ensure confidentiality. On interlocutory appeal, the Court of Appeals reversed, holding that the trial court abused its discretion in granting the motion because "the discovery Bowden seeks is not relevant to her claim that TMC's medical charges for her treatment were unreasonable." The Medical Center, Inc. v. Bowden, 327 Ga. App. 714, 714 (761 SE2d 116) (2014). We granted Bowden's petition for certiorari to review that holding.

As explained below, where the subject matter of a lawsuit includes the validity and amount of a hospital lien for the reasonable charges for a patient's care, how much the hospital charged other patients, insured or uninsured, for the same type of care during the same time period is relevant for discovery purposes. The Court of Appeals erred in concluding otherwise and in holding on that ground that the trial court abused its discretion in granting Bowden's motion to compel. Accordingly, we reverse the Court of Appeals' judgment.

1. On July 1, 2011, the rental car in which Danielle Bowden was a passenger was involved in an accident. At about 10:40 p.m., Bowden, who was 21 years old and did not have health insurance, was taken by ambulance to TMC's hospital in Columbus, Georgia, where she received emergency medical

2

treatment that included surgery for a broken leg. At some point on July 2,

Bowden's mother allegedly signed an admission form that said in relevant part:

> I, the undersigned, am seeking treatment at The Medical Center, Inc. . . . for myself or a person for whom I am responsible for his/her medical care. . . . The undersigned agrees, whether as Agent, Guarantor, or Patient, that in consideration of the services to be rendered to the patient, the undersigned is individually obligated to pay the account in full of the Hospital, and attending physicians, or organizations, or other satisfactory financial arrangements must be made prior to time of patient discharge.

Bowden was discharged from the hospital on July 4. On July 13, she returned to the hospital for physical therapy and allegedly signed the same admission form herself. TMC billed Bowden a total of $21,409.59 for her care and filed a hospital lien for that amount pursuant to OCGA § 44-14-470 (b).[1]

---

[1] OCGA § 44-14-470 (b) says:
> Any person, firm, hospital authority, or corporation operating a hospital, nursing home, or physician practice or providing traumatic burn care medical practice in this state shall have a lien for the reasonable charges for hospital, nursing home, physician practice, or traumatic burn care medical practice care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital, nursing home, physician practice, or provider of traumatic burn care medical practice care, subject, however, to any attorney's lien. The lien provided for in this subsection is only a lien against such causes of action and shall not be a lien against such injured person, such legal representative, or any other property or assets of such persons and shall not be evidence of such person's failure to pay a debt. This subsection shall not be construed to interfere with the exemption from this part provided by Code Section 44-14-474 [exempting moneys that become due under the workers' compensation statutes].

3

On July 27, 2012, the rental car company (Enterprise) filed a complaint in interpleader against Bowden and TMC and paid $25,000 into the registry of the trial court. The complaint alleged that Enterprise was self-insured with an insurance certificate that provided automobile coverage up to $25,000; that Bowden presented a claim against Enterprise, which Enterprise offered to settle for the policy limit; and that the offer was rejected because Bowden and TMC were unable to agree on how much of the settlement proceeds should go to TMC to release its hospital lien.[2]

On August 20, 2012, Bowden answered the complaint and filed a crossclaim against TMC, alleging that she was uninsured and indigent at the time of her treatment and that her bill of $21,409.59 was grossly excessive and did not reflect the reasonable value in the community of her treatment. Bowden also alleged that the emergency nature of her injuries and treatment prevented her from utilizing the provisions of OCGA § 31-7-11 to make pre-treatment cost comparisons.[3] She denied signing a payment contract with TMC and alleged

---

[2] TMC had offered to settle its lien for $8,333, but Bowden declined.

[3] OCGA § 31-7-11 says:
> (a) Any hospital shall, upon request, provide a written summary of certain hospital and related services charges, including but not limited to:

4

that any such contract would be void as both procedurally and substantively unconscionable. Bowden asserted a claim against TMC for unjust enrichment and, alternatively, breach of contract and violation of Georgia's version of the Uniform Deceptive Trade Practices Act ("UDTPA"), OCGA §§ 10-1-370 to 10-1-375. As relief, she sought damages and attorney fees and asked that TMC's "lien be dismissed."

---

(1) The average total charges per patient day for the facility's previous fiscal year;

(2) The daily rate for a room in said hospital, which rate shall include an explanation of the categories of services included in said charge;

(3) Anesthesia charges, with an explanation of the categories of services included in this charge;

(4) Operating room charges;

(5) Recovery room charges;

(6) Intravenous administration charges;

(7) Emergency room charges, with an explanation of the categories of services included in the charge;

(8) The charge for the patient care kit or admission kit or other such items furnished to the patient on admission;

(9) Charges for specific routine tests, including but not limited to a complete blood count, urinalysis, and chest X-ray; and

(10) Charges for specific special tests, including but not limited to electrocardiogram, electroencephalogram, CAT scan of the head, CAT scan of liver, CAT scan of lungs, CAT scan of skeletal system, spirometry, and complete pulmonary function.

Such written summary of charges shall be composed in a simple clear fashion so as to enable consumers to compare hospital charges and make cost-effective decisions in the purchase of hospital services.

(b) The [Department of Community Health] shall adopt rules and regulations to implement the provisions of this Code section and shall implement such regulations as provided in Code Section 31-7-2.1.

Along with her answer and crossclaim, Bowden served on TMC a request for production of documents and a set of seven written interrogatories, as discovery authorized by the Civil Practice Act. See OCGA §§ 9-11-33 (authorizing interrogatories to parties); 9-11-34 (authorizing, among other things, requests for production of documents). The document request sought: (1) medical records and bills related to Bowden's treatment and the hospital lien; and (2) for its fiscal years 2010, 2011, and 2012, TMC's pricing agreements with Medicaid, Medicare, BlueCross/BlueShield of Georgia, and TRICARE and TMC's own indigent care program prices. The interrogatories asked TMC what Bowden's specific, itemized charges would have been if she were covered by Medicaid, Medicare, BlueCross/BlueShield of Georgia, TRICARE, or TMC's indigent care program; what TMC's total gross revenues were from services billed at the OCGA § 31-7-11 rates and from services billed at less than those rates for the fiscal year prior to Bowden's admission; for fiscal years 2010 and 2011, the percentages of patients who paid the OCGA § 31-7-11 rates and who paid less than those rates; and, since July 1, 2011, how many uninsured patients TMC had treated in its emergency room and how many of those patients TMC had billed for their treatment.

6

On August 23, 2012, TMC answered Enterprise's complaint and filed a counterclaim alleging that it billed Bowden the "fair and reasonable amount" of $21,409.59 for the care that she received and requesting that the trial court enter a declaratory judgment that its hospital lien for that amount was "valid and attaches to any settlement proceeds received by Danielle Bowden." On September 21, TMC answered Bowden's crossclaim, denying her allegation that her bill was grossly excessive and did not reflect the reasonable value of her treatment. On the same day, TMC served responses to Bowden's discovery requests. The responses are not contained in the record on appeal, but it appears from other materials in the record that TMC provided Bowden with copies of her medical records and bills but no other documents and that TMC answered none of the interrogatories, instead responding only with boilerplate objections.

On January 16, 2013, Bowden filed a motion under OCGA § 9-11-37 (a) to compel the remaining discovery from TMC. On January 17, Bowden served a second set of discovery requests on TMC, seeking a blank copy of every form that TMC used from 2006 to 2012 that asked patients to guarantee or authorize payment for medical treatment or to assign benefits to TMC or that discussed how or at what rates patients or their insurers might be charged, and asking

7

TMC to identify the specific dates during which each form was in use. Bowden also filed a motion to extend the discovery period for 90 days. On February 15, TMC filed a brief opposing Bowden's motion to compel, focusing its objections on relevance and confidentiality. On February 20, TMC responded to Bowden's second set of discovery requests, raising numerous objections but producing no documents and not answering the interrogatory; Bowden then amended her motion to compel to include the second set of requests.

The trial court held a hearing on the motion to compel on May 30, 2013. Bowden argued that information concerning how much TMC charged other patients, whether insured or uninsured, for the same care during the same time period was relevant to the reasonableness of TMC's charges for her care. TMC argued that Bowden's discovery requests sought information that was not relevant to the case and asked the court to enter a protective order in the event that it granted Bowden's motion, noting that many of its agreements with health insurance companies included confidentiality clauses. See OCGA § 9-11-26 (c) (authorizing the court to enter, for good cause shown, "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the

8

following: . . . (7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way. . . .").  On June 20, 2013, the trial court entered an order granting Bowden's motion to compel subject to the entry of an appropriate protective order to ensure confidentiality, which the parties were directed to submit within 20 days.  The trial court then granted TMC's request for a certificate of immediate review; the Court of Appeals granted TMC's application for interlocutory appeal; and TMC filed a timely notice of appeal.[4]

On appeal, the Court of Appeals reversed the trial court's discovery order, holding that the court had abused its discretion in granting the motion to compel because "the broad range of discovery Bowden requests is not relevant to her claim."  Bowden, 327 Ga. App. at 719.  We granted Bowden's petition for certiorari.

2.    (a)    OCGA § 9-11-26 contains the general provisions regarding

_____

[4] After the trial court granted Bowden's motion to compel, TMC filed a motion for summary judgment and supporting materials, and Bowden then filed a motion and supporting affidavit asking the court to deny TMC's motion and to reopen and extend the discovery period in light of the ongoing discovery dispute, noting that the court had not yet ruled on her previously filed motion to extend the discovery period.  See OCGA § 9-11-56 (f).  It does not appear from the record on appeal that the trial court has ruled on these motions.  See OCGA § 5-6-34 (b) (stating that the filing of a notice of appeal after the granting of an application for interlocutory appeal acts as a supersedeas).

9

civil discovery in Georgia courts. As to the scope of discovery, OCGA § 9-11-26 (b) (1) says that in general, unless otherwise limited by order of the court,

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

Moreover, "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Id. In this civil suit, Bowden seeks to invalidate TMC's hospital lien on the ground that the lien amount — which was the amount TMC billed her for — grossly exceeds the reasonable charges for her care, while TMC alleges that $21,409.59 was a reasonable charge for her care and seeks a declaratory judgment that its lien is valid. Thus, the "subject matter involved in the pending action" indisputably includes whether, in the words of the hospital lien statutes, "the amount claimed to be due" by TMC, OCGA § 44-14-471 (a) (2), consists of the "reasonable charges" for Bowden's hospital care, OCGA § 44-14-470 (b). See Bowden, 327 Ga. App. at 717 ("At issue in this case is whether TMC's charges to Bowden were reasonable.").

10

The question, then, is whether the documents Bowden requested and the interrogatories she propounded are "relevant" — in the broad discovery rather than the narrower trial sense of that term — to the reasonableness of TMC's charges for her care. As the United States Supreme Court explained in interpreting the analogous federal rule of civil procedure as it read at that time:

> The key phrase in this definition — "relevant to the subject matter involved in the pending action" — has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.

Oppenheimer Fund, Inc. v. Sanders, 437 U. S. 340, 351 (98 SCt 2380, 57 LE2d 253) (1978) (citations and footnotes omitted). Thus, in the discovery context, courts "'should and ordinarily do[ ] interpret "relevant" very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.'" Id. at 351, n. 12 (citation omitted). See generally 8 Richard L. Marcus, Federal Practice & Procedure § 2008 (3d ed. updated 2015).[5]

---

[5] In 1972, the General Assembly "comprehensively and exhaustively" revised the discovery provisions of the Civil Practice Act to conform very closely, although not entirely, to the discovery provisions of the Federal Rules of Civil Procedure as they had been amended in 1970. Ga. L. 1970, p. 510. Cases and commentary interpreting the language used in the 1970 version of the federal discovery rules are therefore persuasive authority in interpreting Georgia's discovery statutes. See G.H. Bass & Co. v. Fulton County Bd. of Tax Assessors, 268 Ga. 327, 327-328 (486 SE2d 810) (1997) (looking to court decisions and commentary interpreting a federal discovery rule as persuasive authority in construing an identically worded Georgia discovery statute). The Georgia

11

In accordance with this view, this Court has explained that "through the discovery process, non-privileged information which is in the possession of one party and which gives that party a tactical advantage may be required to be shared with the opposing side," and we have cautioned trial courts that in exercising their discretion to determine the permissible scope of discovery, they should "keep[ ] in mind that the discovery procedure is to be construed liberally in favor of supplying a party with the facts." Tenet Healthcare Corp. v. Louisiana Forum Corp., 273 Ga. 206, 210 (538 SE2d 441) (2000). See also Hampton Island Founders v. Liberty Capital,283 Ga. 289, 297 (658 SE2d 619) (2008) (noting that the discovery rules are designed to remove the potential for secrecy and to provide parties with knowledge of all the relevant facts to reduce the element of surprise at trial); Wayne M. Purdom, Georgia Civil Discovery § 4.5 (updated 2015) (discussing the Georgia courts' broad view of what is

discovery statute at issue here – OCGA § 9-11-26 – was virtually identical to the corresponding federal rule that was in effect in 1972; the only substantive difference was in OCGA § 9-11-26 (b) (4) (A) (ii). Aside from technical amendments, OCGA § 9-11-26 has not been revised since 1972. Over the past 43 years, however, Federal Rule of Civil Procedure 26 has been substantially amended, including several amendments to narrow the scope of discovery, and further amendments will take effect on December 1, 2015, unless Congress disapproves them. See Order adopting amendments to Federal Rules of Civil Procedure (Apr. 29, 2015), available at http://www.supremecourt.gov/orders/ordersofthecourt.aspx; 8 Federal Practice & Procedure § 2008 (discussing prior amendments to Rule 26).

relevant for discovery purposes).

The amounts that TMC charged to (and agreed to accept as payment in full from) other patients treated at the same hospital for the same type of care during the same general time frame that Bowden was treated may not be dispositive of whether TMC's charges for Bowden's care were "reasonable" under OCGA § 44-14-470 (b), to the extent that the other patients were not similarly situated in other economically meaningful ways. But that does not mean that how much TMC charged those other patients is entirely irrelevant — particularly in the broad discovery sense — to the reasonableness of the charges for Bowden's care. See McMillian v. McMillian, 310 Ga. App. 735, 740 (713 SE2d 920) (2011) (Blackwell, J.) (distinguishing between dispositive and probative information for purposes of deciding what is "relevant" in the discovery context).

The fair and reasonable value of goods and services is often determined by considering what similar buyers and sellers have paid and received for the same product in the same market, with adjustments upward or downward made to account for pertinent differences, and we see no reason why the same cannot be true of health care. See Melo v. Allstate Ins. Co., 800 FSupp.2d 596, 602 (D.

13

Vt. 2011) (observing that "relevant evidence of the reasonable value of medical services" may include "evidence as to what the provider usually charges for the services provided, or what other providers usually charge"); Mark A. Hall & Carl E. Schneider, Patients as Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich. L. Rev. 643, 686 (2008) ("In practice, courts [seeking to determine the reasonableness of health care charges] primarily ask (1) what the provider usually charges for the service and (2) what other providers usually charge."). Suppose that, as Bowden argued at the motion to compel hearing, 99% of TMC's patients who received the same care as she did during the same time period had insurance and therefore paid the same much lower sum for their care – say, just $1,000. Under that scenario, a fairminded juror might conclude that the "reasonable charge" for that care was much closer to $1,000 than to the $21,409.59 that TMC billed Bowden. Bowden is entitled to determine if evidence exists to support such an argument.

Of course, TMC would be entitled to present evidence and to argue in response that what it charged its insured patients is not fairly comparable to what it charged uninsured patients like Bowden, because the insured patients were charged based on the hospital's contracts with their insurers that

14

reasonably reflected such economic factors as volume discounts or promises of prompt and full payment, or based on the rates that the government was willing to pay under Medicare or Medicaid. See Huntington Hosp. v. Abrandt, 779 NYS2d 891, 892 (N.Y. App. Term 2004) ("The fact that lesser amounts for the same services may be accepted from commercial insurers or government programs as payment in full does not indicate that the amounts charged to defendant were not reasonable."). TMC might even argue that the varied amounts it charged patients for the care it provided were wholly unrelated to the reasonable value of that care. See Hall & Schneider, supra at 665 (stating that some "[h]ospital executives confess that 'the vast majority of (charges) have no relation to anything, and certainly not to cost'" (footnote omitted)).

There may be reasons why some or all of the information and documents TMC would have to provide in response to the trial court's order may not be admissible at trial. See McMillian, 310 Ga. App. at 740. But as the advisory committee's note on the 1970 amendments to the corresponding federal rule explained, that is no obstacle to discovery:

> Since decisions as to relevance to the subject matter of the action are made for discovery purposes well in advance of trial, a flexible treatment of relevance is required and the making of

15

discovery, whether voluntary or under court order, is not a concession or determination of relevance for purposes of trial.

Fed. R. Civ. Proc. 26 advisory comm. note. At issue now is an order compelling discovery, not a judgment validating or invalidating TMC's hospital lien or even a ruling on the admissibility at trial of specific evidence — all matters on which we express no opinion. For present purposes, all we hold is that the discovery Bowden sought may have some relevance to the reasonableness of TMC's charges for her care, and thus, assuming no other objections to her various requests are made and sustained, before this case proceeds to summary judgment or trial, not only TMC but Bowden is entitled to see what the information and documents show and whether they support her claims and defenses. See McMillian, 310 Ga. App. at 741. See also Hall & Schneider, supra at 684-687 (discussing, in the context of the current health care marketplace, different ways that the reasonable value of hospital and other medical care has been determined by courts and methods of valuation proposed by legal and economics scholars). Consequently, the trial court acted within its discretion in ordering TMC to provide the requested discovery.

16

(b)    To reach the contrary conclusion, the Court of Appeals relied on the following analysis. First, the court noted that hospitals are free to contract with insurance companies to set preferred rates for their insureds, citing a series of its precedents beginning with Cox v. Athens Regional Medical Center, Inc., 279 Ga. App. 586 (631 SE2d 792) (2006), which hold — in the summary judgment context — that charging uninsured patients higher rates than insured patients does not constitute breach of contract, unjust enrichment, or a violation of the UDTPA.   See Bowden, 327 Ga. App. at 718 (citing, in addition to Cox, Satterfield v. Southern Regional Health System, Inc., 280 Ga. App. 584 (634 SE2d 530) (2006); Morrell v. Wellstar Health System, Inc, 280 Ga. App. 1 (633 SE2d 68) (2006); and Pitts v. Phoebe Putney Mem. Hosp., 279 Ga. App. 637 (631 SE2d 830) (2006)).  In response to Bowden's argument that the Cox line of cases was inapplicable because she did not sign a consent form for treatment that obligated her to pay the hospital charges, the Court of Appeals said that Bowden's mother signed such a form on Bowden's behalf as authorized by OCGA § 31-9-2 (a) (3) and that in any event consent for emergency treatment is implied by law under OCGA § 31-9-3 (b).  See Bowden, 327 Ga. App. at 718, n. 3.  Finally, the court said that Bowden could prove through expert testimony

17

or evidence from other medical providers or consumers that TMC's charges were unreasonable.  See id. at 717-718.[6]

We see three basic flaws in this analysis.  First and foremost, the Court of Appeals appears to have concluded, based on its Cox line of cases, that if Bowden signed a contract to pay for her treatment, she would be precluded from challenging the reasonableness of the charges reflected in the hospital's lien. But the Cox line of cases does not directly apply here, because those were summary judgment cases, not discovery cases, and none involved a challenge to a hospital lien.  And the general proposition that hospital charges are automatically "reasonable" whenever the patient (or someone authorized to act on her behalf) has signed a contract agreeing to pay those charges is incorrect, because the contract price for goods and services does not necessarily equal their reasonable value.  See, e.g., City of Calhoun v. N. Ga. Electric Mem. Corp., 264 Ga. 205, 208 (443 SE2d 469) (1994) (recognizing the distinction between the

---

[6] The Court of Appeals also cited its opinion in MCG Health, Inc. v. Kight, 325 Ga. App. 349 (750 SE2d 813) (2013) (Kight I), for the proposition that where a hospital has contracted with an insurance company to accept a certain reimbursement rate, "the hospital would be entitled to collect the full amount of its bill under the lien statute, not merely the lower reimbursement rate contracted between the insurance company and the hospital."  Bowden, 327 Ga. App. at 717 (citing Kight I, 325 Ga. App. at 353).  However, in Kight v. MCG Health, Inc., 296 Ga. 687 (769 SE2d 923) (2015) (Kight II), we deemed this part of the Court of Appeals' opinion in Kight I to be dicta.  See Kight II, 296 Ga. at 690.

18

contract price and the reasonable value of services).  See also 24 Richard A. Lord, Williston on Contracts § 64:2 (4th ed. 2015) (same).  OCGA § 44-14-470 (b) says that the hospital has a lien for the "reasonable charges" for a patient's care, not a lien for "whatever the patient agreed to pay."  Indeed, the lien is not against the patient, but rather against the causes of action giving rise to the patient's injuries, see id., and thus the lien is normally paid off by the tortfeasor or the tortfeasor's insurer — neither of whom was a party to any contract between the patient and the hospital.

Second, as the case now stands, no contract by Bowden to pay for her treatment has been established.  In Bowden's crossclaim, she specifically alleged that "[t]here is no valid written contract or non-written contract between [her] and [TMC] for the provision of medical services and goods" and that any such contract would be "void due to unconscionability."  She further alleged that "[i]f an implied contract for medical treatment is found to exist, [TMC] is entitled to recover from the interpleaded insurance funds only the reasonable value of the benefit conferred."  TMC did not ask the trial court to address the merits of Bowden's allegations that no valid contract exists before the court ruled on the motion to compel discovery, see footnote 4 above, and "[n]ormally,

19

the trial court will not determine whether the legal theory upon which the discovery is based is sound . . . [unless] the claim or defense is sufficiently baseless." Georgia Civil Discovery § 4.5. See also Austin v. Clark, 294 Ga. 773, 776-777 (755 SE2d 796) (2014) (Nahmias, J., concurring) (discussing the sequencing of discovery and dispositive motions on particular issues). Compare Best Concrete Products Co. v. Medusa Corp., 157 Ga. App. 97, 100-101 (276 SE2d 147) (1981) (holding that where the trial court had already dismissed Best's claim of discriminatory pricing as preempted by federal law, discovery from Medusa as to its dealings with other customers was properly refused as irrelevant).

Moreover, on the day before the hearing on the motion to compel, TMC for the first time provided Bowden with a copy of the form consenting to and agreeing to pay for Bowden's emergency treatment that was allegedly signed by her mother, but Bowden denied authorizing her mother to sign a payment contract on her behalf, and the form by its own terms appears to obligate only Bowden's *mother* to pay for the emergency care, as it said that "the undersigned [i.e., Bowden's mother] is individually obligated to pay the account in full to the Hospital." Nor do OCGA §§ 31-9-2 and 31-9-3 support the Court of Appeals'

20

ruling. OCGA § 31-9-2 (a) (3) authorizes parents to consent to medical treatment on behalf of their adult children who are unable personally to consent in certain situations, but it does not say or even suggest that parents can bind their adult children to payment terms included in a treatment consent form. Similarly, OCGA § 31-9-3 (b) says only that when an emergency exists, consent to medical treatment recommended by a duly licensed physician may be implied by law; the statute does not address the patient's obligation to pay for such treatment — much less pay whatever amount the hospital decides to charge.

Finally, the Court of Appeals' observation that Bowden could show through expert testimony or evidence from other medical providers or consumers that TMC's charges were unreasonable seems to acknowledge (correctly) that how much other patients are charged for the same services in the same market is relevant to the issue of reasonableness. If that is so, then more directly applicable information of that type — how much TMC itself charged other patients for the same services — would be even more relevant. The availability of one form of proof does not make other forms of proof irrelevant under OCGA § 9-11-26 (b) (1). See Hampton Island Founders, LLC, 283 Ga.

at 295-297.[7]

(c)    For these reasons, the Court of Appeals erred in holding that the trial court abused its discretion in granting Bowden's motion to compel on the ground that all of the discovery Bowden sought was not "relevant" under OCGA § 9-11-26 (b) (1).  We therefore reverse the Court of Appeals' judgment.

Judgment reversed.  All the Justices concur.


Decided June 15, 2015.

Certiorari to the Court of Appeals of Georgia – 327 Ga. App. 714.

Charles A. Gower, Charles A. Gower, Jr., David T. Rohwedder, for appellant.

Fischer Scott, Bobby Lee Scott, Scott C. Crowley, for appellee.

---

[7] In some situations, the production in discovery of one type of relevant information may make it possible to demonstrate that producing another very similar, or another less relevant, type of information would be unduly burdensome or expensive, justifying a protective order under OCGA § 9-11-26 (c).  But TMC has not argued for a protective order on this ground.