RICHARD W. STORY, United States District Judge
This matter is before the Court on Defendant's Motion to Exclude Certain Opinions of Plaintiffs' Identified Expert Thomas Langley [65], Plaintiffs' Motion in Limine [80], Defendant's Motion in Limine [83], Defendant's Motion in Limine Admissibility of the Release Agreement [84], and Defendant's Motion to Bifurcate [85]. After a review of the Record and oral arguments heard at the February 11,2019 pretrial conference, the Court enters the following Order.
I. Defendant's Motion to Exclude Certain Opinions of Plaintiffs' Identified Expert Thomas Langley [65]
Defendant moves to exclude Plaintiffs' expert witness, Thomas Langley, from offering two opinions: 1) that Dr. Bach entered the intersection on a red light; and 2) that Dr. Bach was not paying proper attention as he approached the intersection where this collision occurred. Defendant challenges Mr. Langley's methods and asserts that his testimony would not assist a jury in determining fault.
Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985) ). The trial court must also "make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry *1300 mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999).
With respect to the reliability of expert testimony, relevant factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." U.S. v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) ). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Id. It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005).
The Court holds that Mr. Langley may not testify as to his opinion regarding Dr. Bach's attentiveness. Plaintiffs have failed to demonstrate how this testimony would provide any insight beyond the understanding and experience of an average citizen to assist the trier of fact, as required by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and Daubert. Mr. Langley may testify about his expert opinions regarding the red light because they meet the above stated requirements. Accordingly, Defendant's Motion [65] is GRANTED in part and DENIED in part .
II. Plaintiffs' Motion in Limine [80]
The Court will address Plaintiffs' arguments in turn.
1. The Release Agreement Between State Farm and Plaintiffs
Plaintiffs argue the Court should exclude any evidence of the Release Agreement between State Farm Mutual Automobile Insurance Company ("State Farm") and Plaintiffs. This issue is fully briefed in response to Defendant's separate Motion in Limine Admissibility of the Release Agreement [84]. For the reasons discussed in Section IV, Plaintiffs' Motion is GRANTED as to this issue.
2. Trooper Smith's Opinions and the Traffic Report
Plaintiffs move to exclude any opinion testimony by Trooper Garrett Smith and the Traffic Crash Report. The Court will consider each in turn.
A. Trooper Smith's Opinion Testimony
Plaintiffs move to exclude Trooper Smith's opinions because he was never identified as an expert witness and his opinions are unduly prejudicial and will confuse the jury. Trooper Smith's testimony is permissible. First, Trooper Smith was never identified as an expert witness because he is not an expert witness. Instead, Defendant suggests Trooper Smith will testify as to what he witnessed at the scene. If his ultimate conclusion is that, based on what he saw, he could not draw a conclusion about what happened and therefore does not have an opinion on the matter, that is evidence Defendant may present to the jury without confusing them or unduly prejudicing Plaintiffs. Thus, Plaintiffs' Motion is DENIED as to this issue.
B. The Traffic Crash Report
Plaintiffs argue the Traffic Crash Report is inadmissible because it contains *1301 hearsay statements of witnesses, as well as Trooper Smith's opinion regarding the validity of the hearsay statements. In response, Defendant offered to redact "any reference to these inadmissible hearsay statements from the Traffic Crash Report prior to its submission to the jury." The Court agrees with this resolution at this stage and will resolve at trial the admissibility of the document otherwise. Thus, Plaintiffs' Motion is DENIED in part and GRANTED in part as to this issue. The Traffic Crash Report is admissible, as long as any hearsay statements and Trooper Smith's opinions regarding the hearsay statements are redacted.
3. Statements of Trooper Smith's Post Commander
Plaintiffs seek to exclude Trooper Smith's testimony on two statements made to him by his post commander as hearsay under Fed. R. Evid. 801(c)(2). Specifically that 1) Trooper Smith needed to supplement his Traffic Crash Report to include statements of eyewitnesses; and 2) Donna Compton called to inquire why the statements were not included. At the pretrial conference, the Court saw value in these statements to explain the existence of a supplemental Traffic Crash Report. In Response [95], Plaintiffs submitted copies of both reports. The only substantive difference between the original report and the supplemental report is that the witnesses' names and contact information are included on the supplemental report. In line with the Court's holding in section 5(B) of this Order, witness names and information should be redacted from the Traffic Crash Report. Accordingly, the Court sees no difference between the two police reports and agrees with Plaintiffs that admission of the supplemental report is unnecessary. Further, without the supplemental report, explanation of its existence is also unnecessary, leaving the Post Commander's comments as inadmissible hearsay with no probative value. Therefore, Plaintiffs' Motion is GRANTED as to this issue.
4. Dr. Bach's Wife's Medical Condition
Plaintiffs argue the Court should exclude any testimony regarding Defendant Dr. Bach's wife's medical condition and his role as her caretaker, because it is irrelevant and prejudicial. A party, however, is permitted to present basic information about himself to the jury. Accordingly, Dr. Bach is permitted to say that his wife had a stroke and that he cares for her. The Court recognizes that testimony beyond basic facts could be irrelevant or prejudicial and will sustain properly made objections in that regard. Thus, Plaintiffs' Motion is DENIED as to this issue.
5. The Word "Accident"
Plaintiffs move to prevent Defendant from suggesting that the collision was merely an accident because it would be unfairly prejudicial. While Plaintiffs are correct that using the "legal accident" defense is impermissible, that does not include all references to the crash as an accident. Therefore, Plaintiffs' Motion is DENIED as to this issue.
6. Effect of Large Verdict on Dr. Bach
Plaintiffs argue Defendant should not argue a significant verdict would negatively impact his life and future. This part of the motion is unopposed. Plaintiffs' Motion is GRANTED as to this issue.
7. Financial Status of Either Party
Plaintiffs move to exclude reference to the financial status of any party. This part of the motion is unopposed. Plaintiffs' Motion is GRANTED as to this issue.
8. Collateral Source Evidence
Plaintiffs move to exclude any evidence related to any collateral source *1302 payments including those made by any insurance company, Medicare, or any other entity to satisfy all or part of the medical bills. Defendant maintains he should be able to use evidence of payments made on behalf of Marvin and Betty Brock by Medicare and their other insurers to contest the reasonableness of medical expenses incurred.[1]
Under Georgia law, "[t]he collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages." Polito v. Holland, 258 Ga. 54, 365 S.E.2d 273, 274 (1988) (quotations and citation omitted). Therefore, "evidence of collateral benefits is inadmissible 'if the only proposition for which it is offered is in reduction of damages, because it is then offered to help prove a proposition which is not a matter in issue.' " ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1298 (11th Cir. 2018) (quoting Polito, 365 S.E.2d at 274 ). However, such evidence may be admissible if it "serves a valid evidentiary purpose other than just revealing to the jury those benefits[,]" such as to impeach a witness who gives false evidence relating to a material issue in the case. Id. 881 F.3d at 1298 (citing Kelley v. Purcell, 301 Ga.App. 88, 686 S.E.2d 879 (2009) ). Ultimately, "[i]t is in the trial court's discretion to weigh the effect of the collateral source evidence before ruling on its admissibility." Kelley, 686 S.E.2d at 881-82.
The Court notes a distinction between submitting evidence of collateral source payments to reduce damages, which is clearly not allowed, and submitting the evidence to challenge the reasonableness of medical bills, which is less clear. The Supreme Court of Georgia held that collateral source payments could be relevant to reasonable rates of medical services in discovery. Bowden v. The Med. Ctr., Inc., 297 Ga. 285, 773 S.E.2d 692, 697 (2015). While contemplating in dicta a scenario where such evidence was presented to a jury, the court maintained that it expressed "no opinion" on the admissibility of specific evidence at trial. Id. 773 S.E.2d at 697-698.
Houston v. Publix Supermarkets, Inc., No. 1-13-cv-206-TWT, 2015 WL 4581541 (N.D. Ga. July 29, 2015), is similarly distinguishable. First, the payments at issue were made by a litigation investment company, not a traditional collateral source like medical insurance or medicare. Second, and most notably, evidence of those payments was proposed to demonstrate a biased billing relationship between the litigation investment company and medical providers. Bias is a separate ground for admissibility, and Defendant has not alleged such a biased relationship here. See ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1304 (11th Cir. 2018) ("[B]ecause there was a valid ground for the admission of the ML Healthcare evidence-to show bias-we do not have to determine whether admissibility of the evidence to challenge the reasonability of the expenses was proper.").[2]
*1303 Ultimately, the Court is required to apply Georgia law, not create Georgia law. See State Farm Mut. Auto Ins. Co. v. Duckworth, 648 F.3d 1216, 1224 (11th Cir. 2011). While there are no Georgia cases directly on point, the Georgia law that does exist on the issue strongly suggests that Georgia courts would consider evidence that a defendant received medicare benefits as inadmissible under the collateral source rule, even to establish the reasonable value of medical services.
The Court recognizes that evidence of medicare market rates for care does not violate the collateral source rule when offered to establish the reasonableness of the amount of damages. See Gaddy v. Terex Corp., 1:14-CV-1928-WSD, 2017 WL 3473872, at *3 (N.D. Ga. July 21, 2017). For example, the Court would allow expert testimony on "the reasonable value of Plaintiff[s'] [ ] medical care based on the average rates paid in the market by all payers." Id. Importantly, this would not include the discounts Plaintiffs purportedly received by taking advantage of certain insurance or government programs. See Id.
Thus, Defendant is barred from using evidence of payments made on behalf of Marvin and Betty Brock by Medicare and their other insurers to show the reasonable value of medical services. Plaintiffs Motion is GRANTED as to this issue.
9. Suggestion that Plaintiffs are Greedy
Plaintiffs argue the Court should exclude any argument by Defendant that they are greedy, acting immorally, or are otherwise acting improperly for seeking full compensation. The Court agrees with Plaintiffs that those arguments can be unduly prejudicial and unhelpful to the fact finder. Accordingly, Plaintiffs' Motion is GRANTED as to this issue. That said, Defendant should inform the Court if they feel Plaintiffs have done something that warrants such an argument.
10. Comparing a Lawsuit to "Playing the Lottery"
Plaintiffs have withdrawn this issue, and their Motion is DENIED as moot accordingly.
11. Tax Implications of Any Verdict
Plaintiffs move to exclude any evidence that recovery could have taxation implications. This part of the motion is unopposed. Plaintiffs' Motion is GRANTED as to this issue.
12. Effects of Any Verdict on Insurance Rates, Premiums or Charges
Plaintiffs move to exclude any reference to effect a lawsuit could have on insurance rates, premiums, or charges. This part of the motion is unopposed. Plaintiffs' Motion is GRANTED as to this issue.
13. References to Motions in Limine
Plaintiffs move to exclude any reference to motions in limine in this case. This part of the motion is unopposed. Plaintiffs' Motion is GRANTED as to this issue.
III. Defendant's Motion in Limine [83]
The Court will address Defendant's arguments in turn.
1. Reference to Liability Insurance
Defendant moves to exclude any reference to insurance, including but not limited to Graphic Arts Mutual Insurance Company. This part of the motion is unopposed. Defendant's Motion is GRANTED as to this issue.
*1304 2. Medical Testimony by Plaintiffs
Defendant moves to exclude testimony by Plaintiffs and any additional lay witnesses on medical diagnoses or other undisclosed expert opinions. While lay witnesses, including Plaintiffs, may not testify on matters requiring an expert, such as a medical diagnosis, they may testify as to what they observed. Thus, Defendant's Motion is GRANTED to the extent a lay witness cannot offer a medical diagnosis, but is otherwise DENIED.
3. Settlement Offers
Defendant moves to exclude any reference to settlement negotiations between the parties. This part of the motion is unopposed. Defendant's Motion is GRANTED as to this issue.
4. Uncalled Witnesses
Defendant argues Plaintiffs should be prohibited from arguing that the jury should fault Defendant for failing to call a witness equally available to both sides. Plaintiffs argue that this matter is best reserved for the charge conference. The Court agrees with Plaintiffs. Defendant's Motion is DENIED as to this issue. However, should a party intend to argue this point, counsel shall advise the Court at the charge conference so that objections can be addressed prior to closing arguments.
5. Vouching for Witnesses
Defendant argues Plaintiffs cannot vouch for a witness. This part of the motion is unopposed. Defendant's Motion is GRANTED as to this issue.
6. Superseded Pleadings
Defendant moves to exclude any reference to pleadings that have been superseded by earlier pleadings. Plaintiffs argue that prior statements of fact in the pleadings are admissible against Defendant as in judicio admissions.
An amended pleading supercedes the original and must be introduced in evidence to be considered by a fact-finder. See Dresdner Bank AG v. M/V OLYMPIA VOYAGER, 463 F.3d 1210, 1215 (11th Cir. 2006) ; Borel v. U.S. Cas. Co., 233 F.2d 385, 388 (5th Cir. 1956). That said, a Plaintiff may offer into evidence an admission in an original pleading, which "can be explained or controverted at the trial by the party filing it." Borel, 233 F.2d at 388. Thus, Defendant's Motion is DENIED as to this issue.
7. References to Motions in Limine
The parties agree that references concerning their motions in limine should be excluded. Defendant's Motion is therefore GRANTED as to this issue.
8. References to Verdicts in Other Cases
Defendant moves to exclude references to verdicts in other cases. This part of the motion is unopposed. Defendant's Motion is GRANTED as to this issue.
9. Golden Rule and Reptile Strategy Arguments
Defendant moves to prevent Plaintiffs' counsel from referencing the "Golden Rule" and/or utilizing so-called "Reptile Strategy" during argument. Plaintiffs agree "Golden Rule" arguments are inappropriate but maintain the "Reptile Strategy" is better addressed at trial. Defendant's Motion is GRANTED to the "Golden Rule" issue in full, and is further GRANTED for the "Reptile Strategy" issue , to the extent Plaintiffs intend to argue damages should be set to punish Defendant or to send a message.
10. Ineffectiveness of Money Damages
Defendant moves to exclude arguments that money damages are ineffective to fully *1305 compensate Plaintiffs. Plaintiffs may argue hedonic damages but cannot suggest that a measure greater than what the Court instructs is appropriate. To that extent, Defendant's Motion is GRANTED on this issue.
11. Impact of Death on Family and Friends
Defendant moves to exclude all evidence of how the deaths of Marvin and Betty Brock have impacted their family and friends. Testimony about the survivors' relationships with the deceased can be relevant in calculating the amount lost by the deceased. Therefore, Defendant's Motion is DENIED on this issue. That said, such testimony can only be used to determine damages from the perspective of the deceased's loss, not the surviving family and friends' loss.
12. Improper Opening Statement
Defendant moves to exclude any improper arguments made during opening statements. This is a premature and broad objection. The Court will rule on any objections at trial. Defendant's Motion is DENIED as to this issue.
13. Dr. Bach's Blurred Vision and Choroidal Folds
Defendant moves to exclude the testimony of Dr. Bach that he experienced occasional and temporary instances blurred vision at times prior to the subject accident and medical records from North Carolina Eye, Ear, Nose & Throat regarding a diagnosis of choroidal folds. This evidence appears relevant to the issue of Dr. Bach's ability to safely operate a vehicle. Thus, if Plaintiffs can lay a proper foundation for the evidence, it is admissible. Thus, for the purposes of this Motion, Defendant's request is DENIED .
14. Hearsay Statements of Accident Witnesses
Defendant moves to exclude hearsay statements of people present at the scene of the accident. This part of the motion is unopposed. Defendant's Motion is GRANTED as to this issue.
15. Apportionment Arguments
Defendant argues Plaintiffs cannot argue that apportionment will reduce the amount of damages recoverable to them. Plaintiffs object, pointing to the pattern jury charge that informs the jury of the effect of apportionment. Defendant's Motion is DENIED as to this issue. The Court will, however, revisit the issue at the charge conference, if Plaintiffs request apportionment.
IV. Defendant's Motion in Limine Admissibility of the Release Agreement [84]
Defendant moves to admit at trial the Release Agreement ("agreement") between State Farm and Plaintiffs. Plaintiffs conversely move in limine to exclude the agreement [80]. Defendant argues the agreement is relevant and therefore is admissible unless otherwise prohibited under Rule 402. Plaintiffs seek to exclude the agreement on three grounds: "(1) it is inadmissible under F.R.E. 408 ; (2) it is inadmissible under F.R.E. 411 as it will inject inadmissible insurance evidence into the record; and (3) it is inadmissible under F.R.E. 402 & 403 because it is irrelevant and highly prejudicial." (Pls.'s MIL, Dkt [80] at 4.)
The Court finds that the agreement is inadmissible under F.R.E. 402 and 403 because the agreement is irrelevant and has no probative value to the issues in the case. Evidence that Plaintiffs took a check from an insurance company does not qualify them to say either party was at fault.
*1306 This sideshow exploration will only serve to confuse the jury. Therefore, Defendant's Motion in Limine Admissibility of the Release Agreement [84] is DENIED .
V. Defendant's Motion to Bifurcate [85]
Defendant moves for separate trials on the issues of liability and damages. "The decision whether to bifurcate, or to sever and try issues separately, pursuant to Rule 42(b) is one committed to the sound discretion of the district court." Kimberly-Clark Corp. v. James River Corp. of Va., 131 F.R.D. 607, 608 (N.D. Ga. 1989). "In considering such a course, the court should remain mindful of the traditional rule of the fact-finder; i.e., to make an ultimately determination on the basis of a case presented in its entirety." Id."In making that decision, the court considers the following factors: 'whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different.' " Brown v. Adv. Engineering, Inc., 732 F.Supp. 1163, 1170 (N.D. Ga. 1990) (quoting Beauchamp v. Russell, 547 F.Supp. 1191, 1199 (N.D. Ga. 1982) ).
Having considered all of these factors, the Court will not bifurcate this trial. Defendant argues that should he prevail at the liability phase, there would be no need for all of the damages testimony. This exact argument was rejected by the Brown court, and this Court finds the reasoning from Brown to be persuasive. Id. at 1171 ("[Defendant's] observation that a jury determination of no liability would eliminate the need for a trial on damages is true in any negligence case-it does not advance the cause of bifurcation"). Accordingly, Defendant's Motion to Bifurcate is DENIED .
SO ORDERED , this 28th day of February, 2019.

In support of his position, Defendant cites, Lawton-Davis v. State Farm Mut. Auto. Ins. Co., 614CV1157ORL37DAB, 2016 WL 1383015, at *2 (M.D. Fla. Apr. 7, 2016). While Lawton-Davis is from a district court in the Eleventh Circuit, it concerns Florida state law, just as this federal case concerns Georgia state law. Thus, in light of the many Georgia cases contradicting Lawton-Davis, this authority is not persuasive. See, e.g., Jonathan L. Seitz v United States of America, 2:14-cv-00060-WCO Order [119] at 18, 2016 WL 10592055 (N.D. Ga. April 27, 2016).

For more analysis of the limitations of Bowden and Houston, see Gaddy v. Terex Corp., 1:14-CV-1928-WSD, 2017 WL 3473872, at *2-*3 (N.D. Ga. July 21, 2017).